**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

_____

IN RE APPLICATION OF OVIK
MKRTCHYAN FOR AN ORDER TO
TAKE DISCOVERY FOR USE IN
FOREIGN PROCEEDINGS PURSUANT TO
28 U.S.C. § 1782
_____

)
)
)
)
)
)
)

Case No. 4:25-mc-1122

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S**
***EX PARTE* APPLICATION FOR AN ORDER TO TAKE DISCOVERY**
**<u>FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782</u>**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT .................................................................................. 1

II.     FACTUAL BACKGROUND ..................................................................................... 2

A.      The Parties and Relevant Third Parties ................................................................ 2

B.      Mkrtchyan and Payne Initially Maintained an Amicable Business Relationship, Despite Payne's Significant Debts to Mkrtchyan .................................................. 6

C.      In 2024, Payne Joined a Coordinated Campaign to Destroy Mkrtchyan's Reputation and Harm His Interests .......................................................................... 7

        1. Mkrtchyan's Unlawful Detention in Uzbekistan (January-April 2024) ............. 7

        2. Letter from Payne, Letter from Agents for Shadmanov/United Cement, and Efforts to Orchestrate Mkrtchyan's Rearrest (mid-2024) ....................................... 8

        3. Disparaging Online Content ................................................................................. 8

D.      Mkrtchyan Has Brought Claims for Civil Libel Against Two Defendants in England, and He Is Contemplating Additional Claims ............................................. 9

E.      Respondents Possess Information that Is Material to the Pending and Contemplated Proceedings in England ................................................................. 10

III.    ARGUMENT .......................................................................................................... 12

A.      Legal Framework .................................................................................................. 12

B.      The Application Satisfies the Statutory Requirements of 28 U.S.C. § 1782 ........ 13

        1. Respondents Are "Found" in the Southern District of Texas ........................... 14

        2. The Discovery Sought Is for Use in Pending or Contemplated Proceedings in a Foreign Tribunal ................................................................................................... 14

        3. Mkrtchyan Is an Interested Person ................................................................... 17

C.      The *Intel* Discretionary Factors Favor Authorizing the Requested Discovery ..... 17

        1. The First Factor Favors Granting the Application ............................................. 17

        2. The Second Factor Favors Granting the Application ........................................ 18

        3. The Third Factor Favors Granting the Application ............................................ 19

        4. The Fourth Factor Favors Granting the Application .......................................... 19

IV.     CONCLUSION ...................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>:**                                                                                                                  **<u>Page(s)</u>:**

*A to Z Rental Center v. Burris*,
    714 S.W.2d 433 (Tex. App.--Austin 1986, writ ref'd n.r.e.) ....................................................4

*Application of Sarrio S.A. for Assistance Before Foreign Tribunals*,
    173 F.R.D. 190 (S.D. Tex. 1995)........................................................................ 12, 13, 17-18

*Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*,
    55 F.4th 469 (5th Cir. 2022) ........................................................................................12

*Banco Mercantil de Norte, S.A. v. Paramo*,
    114 F.4th 757 (5th Cir. 2024)  ........................................................................................13

*Banco Mercantil De Norte, S.A. v. Paramo*,
    No. 4:23-MC-01188, 2025 WL 871622 (S.D. Tex. Mar. 19, 2025)......................................18

*Banoka v. Westmont Int'l Dev. Inc.*,
    No. 21-20434, 2022 WL 480118 (S.D. Tex. Feb. 10, 2022) ..................................................16

*In re BM Brazil 1 Fundo de Investimento em Participacoes Multistrategia*,
    No. 23 Misc. 208, 2024 WL 555780 (S.D.N.Y. Jan. 18, 2024)................................................18

*Bravo Express Corp. v. Total Petrochems. & Ref. U.S.*,
    613 F. App'x 319 (5th Cir. 2015) ........................................................................................16

*Ecuadorian Plaintiffs v. Chevron Corp.*,
    619 F.3d 373 (5th Cir. 2010) ........................................................................................18

*Eni Ghana Expl. & Prod. Ltd v. Gaffney Cline & Assocs., Inc*,
    No. 4:22-MC-01285, 2022 WL 3156224 (S.D. Tex. Aug. 8, 2022)........................... 13-15, 18

*Frasers Grp. PLC v. Gorman*,
    2023 WL 6938284 (S.D.N.Y. Oct. 19, 2023) ........................................................................18

*Grupo Mexico Sab De CV*,
    No. 3:14-MC-00073-G-BH, 2014 WL 12691097 (N.D. Tex. Oct. 17, 2014)........................18

*In re Application of HydroDive Nigeria, Ltd.*,
    No. 13-mc-0477, 2013 WL 12155021 (S.D. Tex. May 29, 2013)..........................................14

*In re Application of RSM Prod. Corp. v. Noble Energy, Inc.*,
    195 F. Supp. 3d 899 (S.D. Tex. 2016) ............................................................................13, 19

*In re Empresa Publica De Hidrocarburos Del Ecuador - EP Petroecuador v. WorleyParsons Int'l, Inc.*,
No. 4:19-MC-2534, 2020 WL 13412872 (S.D. Tex. Apr. 13, 2020) ......................................15

*In re Veiga*,
746 F. Supp. 2d 8 (D.D.C. 2010) ...........................................................................................14

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)........................................................................................ *passim*

*LEG Q LLC v. RSR Corp.*,
No. 3:17-CV-1559-N-BN, 2017 WL 3780213 (N.D. Tex. Aug. 31, 2017) ...............16, 18, 20

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015),..................................................................................................14

*Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*,
694 F.3d 548 (5th Cir. 2012) .......................................................................................... 12-13

## Statutes, Rules & Regulations:

28 U.S.C. § 1782 ......................................................................................... *passim*

Del. Code tit. 6, § 18-1107(m) ..............................................................................................3

Tex. Tax Code § 171.255........................................................................................................4

Tex. Tax Code § 171.2515......................................................................................................3

Tex. Tax Code § 171.252........................................................................................................3

Fed. R. Civ. P. 26(b) ............................................................................................................20

Pursuant to 28 U.S.C. § 1782, Petitioner Ovik Mkrtchyan respectfully submits this memorandum of law in support of his *ex parte* application for an order authorizing him to obtain discovery from Respondents Stephen P. Payne, Linden Strategies, LLC, Linden Energy, LLC, Linden Energy Holdings, Inc., and American LNG Services, LLC for use in foreign proceedings (the "Application") by serving the document and deposition subpoenas attached to the Application.

## I.    PRELIMINARY STATEMENT

This Application arises from an ongoing campaign by individuals and entities around the world to injure Mkrtchyan by unlawful means, first by engineering his illegal detention in Uzbekistan, and then by disseminating false and disparaging information about him to third parties (the "Campaign"). Some participants in the Campaign are known—for example, Mkrtchyan recently brought civil libel claims in England against the owners of *The London Post* and Radha Stirling, who published defamatory content about him—while others have not yet been identified, or the full scope of their activities is not yet known. Respondent Payne is a former business associate of Mkrtchyan's, and the remaining Respondents are companies controlled by Payne.

Payne appears to have joined the Campaign no later than mid-2024. After years of amicable business relations with Mkrtchyan, Payne abruptly changed course and joined with Mkrtchyan's adversaries, sending an unsolicited letter to a senior figure in Uzbekistan that falsely accused Mkrtchyan of crimes and other serious misconduct. The allegations in Payne's letter closely track false claims about Mkrtchyan that have appeared in purported articles, blog posts, and other paid content distributed by participants in the Campaign around the world.

This Application easily satisfies the statutory requirements of Section 1782 and the discretionary factors identified by the Supreme Court in *Intel Corporation v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). With respect to the statutory requirements: (1) Respondents

"reside" or are "found" in this district because Payne lives in Fort Bend County and each of the Respondent companies has its principal place of business in this district; (2) the discovery sought by Mkrtchyan is "for use in" pending and reasonably contemplated proceedings before an English court; and (3) Mkrtchyan, as the claimant (plaintiff) in the English proceedings, is an "interested person" here.  In addition, each of the *Intel* discretionary factors favors the requested discovery.  Accordingly, Mkrtchyan respectfully requests that the Court promptly grant his Application and permit him to serve the attached subpoenas on Respondents.

## II.    FACTUAL BACKGROUND

### A.    The Parties and Relevant Third Parties

***Ovik Mkrtchyan (Petitioner).***  Ovik Mkrtchyan is an entrepreneur and innovator at the helm of multiple businesses.  Decl. of Petitioner ("Pet's Decl.") ¶ 3.  Mkrtchyan was born in Armenia and raised in Uzbekistan, and he now resides in Europe.  *Id.* ¶ 4.  Mkrtchyan's businesses—primarily located in the United Kingdom, Switzerland, Uzbekistan, and Latvia— reflect a focus on innovation, sustainability, and technology.  *Id.* ¶¶ 5-6.  The website for Mkrtchyan's investment company, Gor Investment Limited, describes some of these projects, which include initiatives to combat infection in medical patients, process and dispose of hazardous waste, harness gas metallurgy technology for the production of nano powders of rare and precious metals, and train young engineers in Uzbekistan. *Id.* ¶ 6, Ex. 1.  Gor's advisory board reflects the company's global reach and technological prowess, with members such as former U.S. Secretary of State Mike Pompeo, former Texas governor Rick Perry, and former director of the Oak Ridge National Laboratory, Dr. Thomas Zacharia.  *Id.* ¶ 7.

***Stephen Payne (Respondent).***  Payne is Mkrtchyan's former business associate.  *Id.* ¶ 8. Although Payne styles himself as a successful Texas businessperson, lobbyist, and consultant whose ventures include overseas energy projects, the reality is anything but.  Payne has left a long

trail of broken promises, unpaid debts, failed ventures, and breaches of trust in virtually every corner of his professional and personal life, resulting in a litany of sizable judgments against him from banks, noteholders, casinos, and business associates.[1]  Payne also owes more than $1 million to one of Mkrtchyan's companies, NRCO Engineering S.A. ("NRCO"), as discussed in more detail below.  Payne resides in Richmond, Texas.  Decl. of Ryan Hartman ("Hartman Decl.") ¶ 3, Ex. 1.

***Linden Strategies, LLC (Respondent).***  Linden Strategies, LLC ("Linden Strategies") is a consulting and lobbying firm founded by Payne that is headquartered in Houston or Richmond. Hartman Decl. ¶¶ 4-5, Exs. 2-3; Pet's Decl. ¶ 9.  According to its website, Linden Strategies is "a government relations and business development firm providing strategic analysis and advisory to domestic and international clients, including sovereign nations."  Hartman Decl. ¶ 4, Ex. 2.  The website states that Linden Strategies "specialize[s] in government relations, strategic communications, business advisory, and political consulting."  *Id.*  Although the website for Linden Strategies describes it as an active business based in Houston, the Texas Secretary of State forfeited Linden Strategies' charter, certificate, or registration on March 10, 2023.  *Id.* ¶ 5, Ex. 3. In addition, the Texas Comptroller's records describe Linden Strategies' status as "INACTIVE" and its right to transact business in Texas as "INVOLUNTARILY ENDED" due to failure to pay state taxes.  *Id.* ¶ 6, Ex. 4.[2]

---

[1] *See, e.g.*, No. 2009-73282, *Suzer Group v. Payne et al.*, 189th District Court of Harris County; No. 2009-69050, *Central Bank v. Payne et al.*, 61st District Court of Harris County; No. 2010-46995, *MGM Grand Hotel, LLC v. Payne*, 281st District Court of Harris County; No. 13-cv-2332, *Marsoft v. Payne et al.*, U.S. District Court, Southern District of Texas.; *John Speer & Withers Energy Group, L.P. v. Payne et al.*, 165th District Court of Harris County; No. 955559, *First Victoria Nat'l Bank v. Payne*, Harris County Civil Court at Law No. 4; No. 23-CCR-236089, *State of Texas v. Payne*, Fort Bend County Court at Law No. 3.

[2] The Respondent companies are listed as "inactive" or "forfeited" in Texas and Delaware.  Under Texas and Delaware law, plaintiffs can generally seek judicial relief against inactive companies. *See, e.g.*, Tex. Tax Code §§ 171.2515, 171.252; Del. Code tit. 6, § 18-1107(m).  Regardless, Payne

***Linden Energy, LLC (Respondent).*** Linden Energy, LLC ("Linden Energy") is a Delaware limited liability company founded by Payne that is headquartered in Houston. Pet's Decl. ¶ 10. In 2016, Payne, Linden Energy, and Mkrtchyan's company NRCO entered into written agreements relating to an LNG project in Eastern Europe. *Id.* ¶¶ 14-16. Payne and Linden owe more than $1 million to NRCO under these agreements, and NRCO is pursuing recovery separately. *Id.* ¶¶ 17-18. According to Delaware state records, Linden Energy's registration has been revoked due to failure to pay state taxes. Hartman Decl. ¶ 7, Ex. 5.

***Linden Energy Holdings, Inc. (Respondent).*** Payne also founded Linden Energy Holdings, Inc. ("Linden Holdings"), a company headquartered in Houston, and holds himself out as its President and CEO. *Id.* ¶¶ 8-9, Exs. 6-7. The website for Linden Holdings describes it as "a U.S.-based, internationally focused energy development company" that was "[f]ounded in 2013 by Stephen Payne" and has "projects under development in Europe, Eastern Europe, and South Asia." *Id.* ¶ 8, Ex. 6. Although the website describes the company as an active business located in Houston, the Texas Secretary of State forfeited its charter, certificate, or registration on March 10, 2023. *Id.* ¶ 9, Ex. 7. In addition, the Texas Comptroller's records describe Linden Holdings' status as "NOT REGISTERED" and its right to transact business in Texas as "FORFEITED." *Id.* ¶ 10, Ex. 8.

***American LNG Services, LLC (Respondent).*** American LNG Services, LLC ("American LNG") is another company controlled by Payne. It is also headquartered in Houston. *Id.* ¶ 11, Ex. 9. As part of the 2016 LNG deal, Payne provided a signed promissory note personally

---

can be responsible for the obligations of his Respondent companies to the extent he has continued to operate under their names while their status was inactive or forfeited. *See, e.g.*, Tex. Tax Code § 171.255; *A to Z Rental Ctr. v. Burris*, 714 S.W.2d 433, 436 (Tex. App.--Austin 1986, writ ref'd n.r.e.).

guaranteeing the repayment of more than $1 million, backed by shares in American LNG.  Pet's Decl. ¶ 16.  Texas Secretary of State forfeited American LNG's charter, certificate, or registration on February 28, 2020.  Hartman Decl. ¶ 11, Ex. 9.  In addition, the Texas Comptroller's records describe American LNG's status as "INACTIVE" and its right to transact business in Texas as "INVOLUNTARILY ENDED."  *Id.* ¶ 12, Ex. 10.

*2Trom Media Group and Viktor Tokarev, owners of The London Post (third parties and defendants in English proceedings).*  *The London Post* is an online content hosting platform that, on information and belief, is owned by 2Trom News Group, which is itself primarily owned by Viktor Tokarev of Moscow Media Group.  Decl. of Nigel Tait ("Tait Decl.") ¶ 9.  Notwithstanding that its name suggests that it is a newspaper or news media entity, it posts a wide range of content, much of which appears to be the result of paid placements and/or to derive directly from press releases or other public relations activities.  Mkrtchyan has brought suit against 2Trom News Group and Tokarev for libel in England based on their October 2024 publication of false and disparaging content about him (the "London Post Content").  *Id.* ¶¶ 9, 11, Ex. 1.

*Radha Stirling (third party and defendant in English proceedings).*  Radha Stirling is a public relations consultant based outside the U.S.  *Id.* ¶ 10.  According to her website, a 2018 Daily Beast article described her as running "an extraordinarily slick – and convincing – PR campaign" on behalf of Princess Latifa of Dubai.  Hartman Decl. ¶ 13, Ex.  11.  She operates these campaigns through organizations she founded with seemingly benevolent names such as Detained in Dubai, Due Process International, and IPEX (Interpol and Extradition) Reform.  *Id.*  According to her, one of her clients is Ulugbek Shadmanov (*id.* ¶ 14, Ex. 12), an Uzbek businessperson and key participant in the Campaign.  Mkrtchyan has sued Stirling for libel in England based on false and

disparaging content about him that she posted online in January 2025 ("the Stirling Content"). Tait Decl. ¶¶ 10, 12-13, Exs. 2-3.

**_Other participants in the Campaign._** Many of the other participants in the Campaign are unknown, and the requested discovery will be critical to uncovering their identities. Others, such as Shadmanov, his company United Cement, and his agents such as Stephen Akard, are known, but the full scope of their involvement in the Campaign is not. The relationships between the various actors and their activities—Payne and his companies, _The London Post_, Stirling and her client Shadmanov, Shadmanov's company United Cement, and Shadmanov's other agents— suggest that their efforts are coordinated and motivated by a shared intent to harm Mkrtchyan.

### B. Mkrtchyan and Payne Initially Maintained an Amicable Business Relationship, Despite Payne's Significant Debts to Mkrtchyan

Payne describes himself as a Texas businessperson, lobbyist, and consultant who claims to have deep experience in LNG projects and energy consulting. In reality, Payne repeatedly fails to deliver on his sweeping promises, and public records show that he has been sued more than a dozen times by dissatisfied business partners and counterparties.

Over the years, Mkrtchyan or his companies have hired Payne for services, loaned him money, and collaborated with him on projects. Pet's Decl. ¶ 13. In July 2016, Payne, Linden Energy, and Mkrtchyan's company NRCO entered into written agreements relating to the LNG project. _Id._ ¶¶ 14-16. NRCO caused more than $1 million to be tendered in support of the project. _Id._ ¶ 15. Ultimately, Payne informed Mkrtchyan that he could not deliver on the project, but he repeatedly assured Mkrtchyan that he would repay the funds. _Id._ ¶ 17.

Mkrtchyan's trust in Payne was misplaced. Their business relationship ended in mid-2024, when Mkrtchyan learned that Payne had secretly sent a false and disparaging letter about him to a senior figure with influence over Uzbekistan's government. _Id._ ¶ 19. After Payne was confronted

with this information, he cut ties with Mkrtchyan and began to deny responsibility for the debt. *Id.* ¶ 20.

### C.    In 2024, Payne Joined a Coordinated Campaign to Destroy Mkrtchyan's Reputation and Harm His Interests

Mkrtchyan's extensive business interests have, at times, made him a target.  In the last two years, his adversaries' attempts to harm him have included a successful effort to orchestrate his unlawful detention in Uzbekistan (January-April 2024); a false and disparaging letter sent by Payne to a senior figure with influence over Uzbekistan's government (August 2024); a similar false and disparaging letter sent by agents for Shadmanov/United Cement (August 2024); a failed attempt to engineer Mkrtchyan's rearrest by Uzbek authorities (August 2024); libelous content posted by *The London Post* (October 2024); libelous content posted by Stirling (January 2025); and dozens of other false and disparaging "articles" and posts (July 2024-present).  *Id.* ¶¶ 21-22.

#### 1.    *Mkrtchyan's Unlawful Detention in Uzbekistan (January-April 2024)*

In early 2024, Mkrtchyan's adversaries succeeded in orchestrating his wrongful detention in Uzbekistan, and he was held under harsh conditions for several months.  *Id.* ¶ 23.  Officials confined him to a small cell, repeatedly interrogated him, denied him access to medication and other necessities, and attempted unsuccessfully to extract money and false confessions from him. *Id.* ¶ 24.

While Mkrtchyan was detained, Payne sent a letter of support to the President of Uzbekistan.  *Id.* ¶ 26, Ex. 2.  This letter, dated April 10, 2024, included the following statements:

- "On January 17, 2024 upon their departure from the office in Tashkent, Mr. Ovik Mkrtchyan and his daughter were detained by officers of the SGB (State Security Service)."

- "For the duration of his detainment from 17 January 2024 the officers of SGB were constantly pressing Mr. Ovik Mkrtchyan to admit guilt for crimes he did not commit."

- "Since Mr. Mkrtchyan did not admit any fictitious charges, the SGB personnel resorted to pressuring and forcing the relatives and acquaintances of Mr. Mkrtchyan to provide fictitious information that would incriminate him."

- "The true reason behind this issue is a conflict between Mr. Ovik Mkrtchyan on one hand,  and" a group headed by "Shadmanov . . . on the other."

*Id.*  Throughout his detention, Mkrtchyan refused to confess to crimes he had not committed.  *Id.* ¶ 27.  He ultimately was released in April 2024.  *Id.*  Official records confirm that he was not convicted of any crimes.  *Id.* ¶ 28.

### 2.    *Letter from Payne, Letter from Agents for Shadmanov/United Cement, and Efforts to Orchestrate Mkrtchyan's Rearrest (mid-2024)*

Following Mkrtchyan's release from detention in April 2024, Mkrtchyan's adversaries turned their efforts to damaging his reputation with Uzbek officials and laying the groundwork for his rearrest.  *Id.* ¶ 29.

In or around August 2024, Payne sent another letter to Uzbekistan, retracting his April 2024 letter in support of Mkrtchyan and falsely accusing Mkrtchyan of serious misdeeds, including ties to Russian organized crime, threats, and extortion.  *Id.* ¶ 30.  Also in August 2024, an agent for Shadmanov/United Cement sent a letter containing similar allegations to the Uzbek government.  *Id.* ¶ 31.

Around the same time in mid-2024, Mkrtchyan learned of a renewed plot to orchestrate his arrest.  *Id.* ¶ 32.  Fortunately, he and his family were able to leave the country before he was rearrested, and they have resided in Europe since then.  *Id.* ¶ 33.

### 3.    *Disparaging Online Content*

The Campaign continues to include dozens of articles, posts, and other content published on hosting platforms around the world.   *Id.* ¶ 34.   The volume of publications dramatically

increased beginning around July 2024, around the time Payne joined the Campaign and sent his disparaging letter. *Id.* ¶ 35.

### D. Mkrtchyan Has Brought Claims for Civil Libel Against Two Defendants in England, and He Is Contemplating Additional Claims

Mkrtchyan seeks to redress the harms caused by the Campaign in both pending and contemplated proceedings in England.  He has filed civil libel claims against two participants—the owners of *The London Post* and Stirling—and anticipates pursuing additional claims, including claims for libel and conspiracy to injure by unlawful means, against defendants subject to jurisdiction in England.  Tait Decl. ¶ 18; Pet's Decl. ¶ 36.

*Libel proceedings against the owners of The London Post.*  Mkrtchyan's English counsel filed the claim in this action on April 22, 2025.  Tait Decl. ¶¶ 1, 9, 11, Ex. 1.  The defendants are 2Trom Media Group and Viktor Tokarev of Moscow Media Group.  *Id.* ¶¶ 9, 11, Ex. 1.  2Trom Media Group is primarily owned by Tokarev.  The claim seeks damages (including aggravated damages arising from the fact that the content was published as part of or pursuant to the Campaign), injunctive relief, and other statutory remedies for libel arising from the publication of the London Post Content.  *Id.*  A statement of particulars in this case was served on June 12, 2025. *Id.* ¶ 13, Ex. 4.

*Libel proceedings against Stirling.*  Mkrtchyan's English counsel filed the claim in this action on April 22, 2025.  *Id.* ¶¶ 1, 10, 12, Ex. 2.  The claim seeks damages (including aggravated damages arising from the fact that the various publications for which Stirling is responsible were published as part of the Campaign), injunctive relief, and other statutory remedies for libel arising from the publication of the Stirling Content.  *Id.* ¶¶ 10, 12, Ex. 2.  A statement of particulars in this case was served on June 6, 2025.  *Id.* ¶ 13, Ex. 3.

*Pending and contemplated proceedings.*   Based on evidence gathered to date, Mkrtchyan believes that *The London Post* and Stirling did not act independently and in isolation; rather, they were part of the larger Campaign to harm him and his interests by unlawful means.   Pet's Decl. ¶ 37.   As explained above, the Campaign's activities to date have included a successful effort to unlawfully detain Mkrtchyan in Uzbekistan, false and disparaging letters sent by Payne and others working with him to the Uzbek government, a failed attempt to engineer Mkrtchyan's rearrest in Uzbekistan, libelous content posted by *The London Post* and Stirling, and dozens of other false and disparaging articles and posts (July 2024-present).   To redress these harms, Mkrtchyan is pursuing his existing libel claims against the owners of *The London Post* and Stirling, and filed the above-referenced statements of particulars regarding those claims asking the English courts to conclude that *The London Post* and Stirling published their content as part of a coordinated disinformation campaign carried out against him to harm him through libel and other unlawful means. Tait Decl. ¶¶ 8-14, 16-18; Pet's Decl. ¶¶ 36-38.   In addition, Mkrtchyan intends to bring additional claims in the courts of England, including an anticipated claim for a conspiracy to injure him by unlawful means.  Tait Decl. ¶¶ 14, 18; Pet's Decl. ¶ 36.   Both his existing and contemplated claims will be based in part on any supporting evidence of a broader coordinated disinformation campaign and/or unlawful means conspiracy that is gathered as part of this Application.  Tait Decl. ¶¶ 16-17,19; Pet's Decl. ¶ 39.   Mkrtchyan thus seeks discovery under Section 1782 for use in these pending and contemplated proceedings in the English courts.  Tait Decl. ¶ 19; Pet's Decl. ¶ 36.

### E.    Respondents Possess Information that Is Material to the Pending and Contemplated Proceedings in England

The existing evidence suggests that Payne, acting individually or through his companies, is a participant in the Campaign and that Respondents accordingly possess material information

about the Campaign's activities.  For example, the following facts link Payne to the actions of *The London Post*, Stirling, and other Campaign participants:

- Beginning in mid-2024, Payne and his companies directly participated in efforts to damage Mkrtchyan's reputation and harm his interests, including sending a false and disparaging letter to a senior figure with influence over Uzbekistan's government.  The letter, which is signed by Payne, is on Linden Strategies letterhead.  Pet's Decl. ¶ 42.

- The allegations in Payne's letter closely track allegations made by others who have sought to harm Mkrtchyan.  In particular, similar allegations appear in the August 2024 letter from Shadmanov/United Cement's agent, the October 2024 article published by *The London Post*, Stirling's January 2025 post, and online content published by hosting platforms around the world.  *Id.* ¶ 43.

- Payne's April 2024 letter calling for Mkrtchyan's release from detention reflects intimate knowledge of the activities of Shadmanov (Stirling's client) and United Cement (Shadmanov's company).  While Payne was initially at odds with Shadmanov and United Cement—going so far as to accuse them of illegal activity in the April 2024 letter—he appears to have switched sides between April and August 2024.  *Id.* ¶ 44.  Payne's abrupt reversal suggests that he was recruited to the Campaign between April and August 2024.

- Payne and his company, Respondent Linden Energy, owe Mkrtchyan's company NRCO more than $1 million in connection with the written agreements and promissory note signed in July 2016.  Respondent American LNG provided collateral for the promissory note.  Had Payne and Mkrtchyan's other adversaries succeeded in prompting his rearrest in August 2024, Payne may have been able to delay or avoid this significant financial obligation.  *Id.* ¶ 45.

- The timing of Payne's false and disparaging letter aligns with the timing of other events in the Campaign, including the August 2024 letter from Shadmanov/United Cement's agent and the widespread publication of false and disparaging information about Mkrtchyan beginning around July 2024.  *Id.* ¶ 46.

It is no coincidence that Payne—a Texas businessperson with no particular history in Uzbekistan—chose to write a letter to a senior figure there to accuse Mkrtchyan of misdeeds.  As described in more detail in the subpoenas, if Mkrtchyan's request for 1782 discovery is granted, Mkrtchyan will seek documents from Payne and his companies, and deposition testimony from Payne, about their interactions with *The London Post*, Stirling, and other participants in the

Campaign.  This information is highly relevant to both the pending and contemplated proceedings in England.

## III.    ARGUMENT

### A.    Legal Framework

Under 28 U.S.C. § 1782, titled "Assistance to foreign and international tribunals and to litigants before such tribunals," a district court may authorize discovery "for use in a proceeding in a foreign or international tribunal."  In reviewing a Section 1782 application, a court first considers whether the statutory requirements are satisfied.  If so, the court next considers whether the discretionary factors articulated by the Supreme Court in *Intel* support granting the discovery sought.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).  Under Section 1782, courts have "broad discretion to grant a foreign litigant's request to conduct discovery in the United States for use in foreign proceedings."  *Application of Sarrio S.A. for Assistance Before Foreign Tribunals*, 173 F.R.D. 190, 193 (S.D. Tex. 1995).  This is because Section 1782's purpose is "to facilitate third-party discovery in American district courts."  *See Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 55 F.4th 469, 473 (5th Cir. 2022).

Section 1782 contains three statutory prerequisites: (1) the person from whom discovery is sought must reside or be found in the district in which the application is filed; (2) the discovery must be for use in a proceeding in a foreign or international tribunal; and (3) the application may be made by "any interested person."  *Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 553 (5th Cir. 2012) (quoting 28 U.S.C. § 1782).

If the court determines that the statutory requirements are satisfied, it then considers four discretionary factors: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government, court, or agency to U.S. judicial

assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the Section 1782 request is "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 264-65.

No single discretionary factor is dispositive, and a court may grant a Section 1782 application even if some factors weigh against it.  *In re Application of RSM Prod. Corp. v. Noble Energy, Inc.*, 195 F. Supp. 3d 899, 905-07 (S.D. Tex. 2016) (ordering discovery even though "the first [*Intel*] factor weigh[ed] against allowing discovery").  Ultimately, a court's discretion in considering Section 1782 applications is "informed by the twin aims of the statute, which are to provide efficient means of assistance in our federal courts to participants in international litigation . . . and to encourage foreign countries by example to provide similar means of assistance to our courts."  *Tex. Keystone, Inc.*, 694 F.3d at 553-54 (internal citation and quotation marks omitted); *Application of Sarrio S.A.*, 173 F.R.D. at 193 ("The history of section 1782 indicates that Congress intended federal courts to provide broad assistance to foreign litigants who request permission to conduct discovery in the United States.").

"Section 1782 petitions are often initially considered *ex parte*.  However, once the target of the requested discovery is served [with the court-authorized subpoenas], that target may resist the discovery demands, often via a motion to quash."  *Banco Mercantil de Norte, S.A. v. Paramo*, 114 F.4th 757, 758-59 (5th Cir. 2024); *see also Eni Ghana Expl. & Prod. Ltd v. Gaffney Cline & Assocs., Inc*, No. 4:22-MC-01285, 2022 WL 3156224, at *3 (S.D. Tex. Aug. 8, 2022) (granting *ex parte* application and finding that "[a]pplications under § 1782 routinely proceed *ex parte*").

### B.    The Application Satisfies the Statutory Requirements of 28 U.S.C. § 1782

The Application clearly satisfies Section 1782's statutory requirements: (1) Respondents reside or are otherwise found in the Southern District of Texas; (2) the discovery sought is for use

in pending or contemplated proceedings in England; and (3) Mkrtchyan is an "interested person" as the claimant in the pending and contemplated proceedings in England.

### 1.    Respondents Are "Found" in the Southern District of Texas

The Application meets the first statutory requirement under Section 1782.  All Respondents are found in the Southern District of Texas.  Respondent Payne resides in Fort Bend County. Hartman Decl. ¶ 3, Ex. 1.  The remaining Respondents—Linden Strategies, LLC; Linden Energy, LLC; Linden Energy Holdings, Inc.; and American LNG Services LLC—all have their principal place of business in Fort Bend or Harris Counties.  *Id.* ¶¶ 3, 5, 8-12, Exs. 1, 3, 6-10;  Pet's Decl. ¶ 10.  *See In re Application of HydroDive Nigeria, Ltd.*, No. 13-mc-0477, 2013 WL 12155021, at *1 (S.D. Tex. May 29, 2013); *Eni Ghana Expl. & Prod. Ltd*, 2022 WL 3156224, at *3.

### 2.    The Discovery Sought Is for Use in Pending or Contemplated Proceedings in a Foreign Tribunal

The Application meets the second statutory requirement under Section 1782.  Mkrtchyan seeks discovery from Respondents "for use in" the pending and contemplated proceedings in the English court.  Tait Decl. ¶¶ 4, 15, 19 (confirming that the discovery sought here is "for use in" the pending and contemplated English proceedings); Pet's Decl.  ¶¶ 36, 39.    Under this requirement, the proceedings must be either "pending" or "within reasonable contemplation." *Intel*, 542 U.S. at 259.  Moreover, the relevancy standard under Section 1782 is "liberal" and the "burden imposed on the applicant on this issue is *de minimis*."  *In re Application of HydroDive Nigeria*, 2013 WL 12155021, at *3.  In other words, relevancy under Section 1782 is "broadly construed and encompasses any material that bears on, or that reasonably leads to other matters that could bear on, any issue that is or may be in the case."  *Id.* (quoting *In re Veiga*, 746 F. Supp. 2d 8, 18 (D.D.C. 2010)); *see also Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015) ("Under § 1782, an applicant may seek discovery of any materials that can be made use of in the foreign proceeding

to increase her chances of success."). Because the requested discovery is relevant to the pending and contemplated English proceedings (Tait Decl. ¶¶ 15, 19), the Application meets the "for use in" statutory requirement under Section 1782.

Pending English proceedings. As stated above, in April 2025, Mkrtchyan's English counsel initiated civil libel proceedings against the owners of *The London Post* and Stirling in the King's Bench Division of the High Court, and are asking the English courts to decide that the published content is part of a broader disinformation campaign against Mkrtchyan, about which Mkrtchyan now seeks discovery in this Section 1782 Application. Tait Decl. ¶¶ 4, 16-17, 19; Pet's Decl. ¶¶ 37-38. Accordingly, the requested discovery is warranted. *See, e.g.*, *Eni Ghana Expl. & Prod. Ltd*, 2022 WL 3156224, at *3 (ordering discovery "for use in" the proceeding "currently pending before" Ghanian courts because petitioner "intend[ed] to use the requested evidence to fight against the [government's] directives before those tribunals"); *In re Empresa Publica De Hidrocarburos Del Ecuador - EP Petroecuador v. WorleyParsons Int'l, Inc.*, No. 4:19-MC-2534, 2020 WL 13412872, at *4 (S.D. Tex. Apr. 13, 2020) (ordering discovery "for use in" two pending criminal proceedings in Ecuador); *In re HydroDive Nigeria Ltd.*, 2013 WL 12155021, at *3 (ordering discovery "for use in" the Nigerian defamation proceedings because the requested "material, if not directly relevant, [could] lead to the discovery of information that bears on an issue in the case").

Contemplated English proceedings. Mkrtchyan also intends to bring additional claims in England related to the activities of the Campaign, including an anticipated claim for a conspiracy to injure him by unlawful means. Tait Decl. ¶¶ 3, 4, 14, 18-19; Pet's Decl. ¶ 36. Such claims will be filed imminently. Pet's Decl. ¶ 40. In support of those pending and anticipated claims, the requested discovery would inquire into Payne's relationships, interactions, and activities in

connection with the Campaign, including his interactions with *The London Post* and its owners, Stirling, Stirling's client Shadmanov, Shadmanov's company United Cement, Shadmanov and United Cement's agents, and others involved in the efforts to harm Mkrtchyan.

A contemplated proceeding need not be "imminent," but only "within reasonable contemplation." *Intel*, 542 U.S. at 259. In other words, "future proceedings must be more than speculative." *Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*, 613 F. App'x 319, 322 (5th Cir. 2015) (internal citation and quotation marks omitted). The standard can be met, for example, with an affidavit from a foreign counsel that a claim would be filed, explanation of a potential claim, or prepared legal documents to be filed in foreign proceedings. *See, e.g.*, *id.* at 323 (foreign litigation was reasonably contemplated where sworn affidavit stated that action would be "imminently filed," explained facts giving rise to suit, and prepared "claim of particulars" for the English litigation); *Banoka v. Westmont Int'l Dev. Inc.*, No. 21-20434, 2022 WL 480118, at *5 (S.D. Tex. Feb. 10, 2022) (foreign proceedings were reasonably contemplated because petitioners "have extensively set out their legal theory and retained English counsel"). Contemplated proceedings are not "speculative" simply because they will be based on the evidence obtained through the Section 1782 discovery. *See, e.g.*, *LEG Q LLC v. RSR Corp.*, No. 3:17-CV-1559-N-BN, 2017 WL 3780213, at *6 (N.D. Tex. Aug. 31, 2017) (foreign proceedings were contemplated when petitioner served "pre-action correspondence" on defendants and "intend[ed] to commence th[e] action after obtaining discovery pursuant to Section 1782").

Here, Mkrtchyan already has *pending* claims against the owners of *The London Post* and Stirling. Tait Decl. ¶¶ 4, 16-17, 19; Pet's Decl. ¶¶ 36-38. Those cases are pending in the King's Bench Division of the High Court. Mkrtchyan's counsel in English proceedings served statements of particulars on both defendants in June 2025. Tait Decl. ¶ 13, Exs. 3-4. In those pending

proceedings, Mkrtchyan and his counsel are asking the English courts to decide that the published content is part of a broader disinformation campaign against him, and the requested discovery is relevant to and for use in that inquiry.  *Id.* ¶¶ 4, 15-19; Pet's Decl. ¶¶ 37-38.  Moreover, Mkrtchyan also intends to bring additional claims in England related to the activities of the Campaign, including an anticipated claim for a conspiracy to injure him by unlawful means.  Tait Decl. ¶¶ 3-4, 14, 18-19; Pet's Decl. ¶ 36.  Such claims will be filed imminently, and as soon as possible after obtaining further evidence in support of them and identifying individuals who would be defendants.  Pet's Decl. ¶ 40.  Mkrtchyan has already retained his existing counsel in England to represent and advise him on those claims and to file them as soon as possible.  *Id.*  Accordingly, the requested discovery is undoubtedly "for use" in a foreign proceeding.  *See Application of Sarrio S.A.*, 173 F.R.D. at 191-92, 199 (granting Section 1782 application for use in English civil action).

### 3.    *Mkrtchyan Is an Interested Person*

Mkrtchyan meets the third statutory requirement under Section 1782.  As the claimant in the English civil proceedings, Mkrtchyan is "[n]o doubt . . . included among, and may be the most common example of, the 'interested person [s]' who may invoke § 1782."  *Intel*, 542 U.S. at 256.

## C.    The *Intel* Discretionary Factors Favor Authorizing the Requested Discovery

### 1.    *The First Factor Favors Granting the Application*

The first *Intel* factor—whether the respondent is a participant in the foreign proceeding— favors granting discovery.  When the Respondent is participating in the foreign proceeding, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."  *Id.* at 264.  By contrast, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."  *Id.*  Here, Respondents are not parties to the English proceedings, and there are significant jurisdictional

obstacles to bringing claims against American defendants in England, particularly in actions for libel. Tait Decl. ¶ 20. Thus, the first *Intel* factor favors authorizing the requested discovery.

### 2. *The Second Factor Favors Granting the Application*

"The second [*Intel*] factor considers whether the foreign tribunal is receptive to judicial assistance offered by the U.S. federal courts." *Grupo Mexico Sab De CV*, No. 3:14-MC-00073-G-BH, 2014 WL 12691097, at *3 (N.D. Tex. Oct. 17, 2014). In applying the second *Intel* factor, courts in this circuit "typically analyze whether there has been a 'clear directive' from the foreign tribunal that it 'would reject evidence' produced in the United States." *Eni Ghana Expl. & Prod. Ltd*, 2022 WL 3156224, at *4 (quoting *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 377 (5th Cir. 2010)). "A clear directive generally derives from 'authoritative proof—in the form of a judicial, executive, or legislative declaration—that the foreign jurisdiction would be hostile to such evidence.'" *Eni Ghana Expl. & Prod. Ltd*, 2022 WL 3156224, at *4 (quoting *LEG Q LLC*, 2017 WL 3780213, at *9). A respondent who moves to quash a subpoena issued under an *ex parte* Section 1782 order bears the burden of establishing a clear directive then. *See Banco Mercantil De Norte, S.A. v. Paramo*, No. 4:23-MC-01188, 2025 WL 871622, at *6 (S.D. Tex. Mar. 19, 2025).

Here, no such "clear directive" exists. To the contrary, U.S. courts "routinely find that 'courts in the United Kingdom … are [] receptive to Section 1782 discovery.'" *In re BM Brazil 1 Fundo de Investimento em Participacoes Multistrategia*, No. 23 Misc. 208, 2024 WL 555780, at *13 (S.D.N.Y. Jan. 18, 2024), *report and recommendation adopted sub nom. In re BM Brazil 1 Fundo De Investimento EM Participacoes Multistrategia*, 2024 WL 554302 (S.D.N.Y. Feb. 12, 2024); *see also Frasers Grp. PLC v. Gorman*, 2023 WL 6938284, at *3 (S.D.N.Y. Oct. 19, 2023) ("England is generally receptive to § 1782 discovery requests."); *LEG Q LLC*, 2017 WL 3780213, at *9 (finding no "clear directive or authoritative proof that the English High Court would reject evidence obtained with the aid of Section 1782"). Indeed, in *Application of Sarrio S.A.*, the court

noted an opinion by England's House of Lords (its highest judicial body) expressly approving a private litigant's use of § 1782 requests.  173 F.R.D. at 197.  These observations by American courts are consistent with the declaration of Mkrtchyan's English counsel, who states that courts in England are generally receptive to evidence gathered as part of the Section 1782 process and have not, to his knowledge, issued any directive against such evidence.  Tait Decl. ¶ 23.

Accordingly, the second *Intel* factor also favors authorizing the requested discovery.  *See In re Application of RSM Prod. Corp.*, 195 F. Supp. 3d at 905 (noting that the second factor favors discovery when foreign courts "are generally receptive to § 1782 evidence").

### 3.    The Third Factor Favors Granting the Application

The third *Intel* factor asks whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States.  This factor is distinct from whether discovery would be allowed in the foreign jurisdiction. *See Intel*, 542 U.S. at 261 ("[C]omity and parity concerns … do not permit our insertion of a generally applicable foreign-discoverability rule into the text of § 1782(a)").  Instead, a district court may consider what restrictions exist in a foreign jurisdiction and whether the discovery sought attempts to thwart them.  *In re Application of RSM Prod. Corp.*, 195 F. Supp. 3d at 906.

Mkrtchyan's Application does not attempt to evade English law or public policy.  Tait Decl. ¶ 24  As noted above, English courts are receptive to discovery obtained through Section 1782 applications.  Additionally, Mkrtchyan's subpoenas do not seek information protected by the legal advice privilege (*id.*), but instead allow Respondents to provide a privilege log consistent with the Federal Rules.  Thus, the third *Intel* factor favors authorizing the requested discovery.

### 4.    The Fourth Factor Favors Granting the Application

The last *Intel* factor concerns whether the discovery sought is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.  The intrusiveness and burden of Section 1782 discovery

are evaluated under the standards laid down by the Federal Rules of Civil Procedure.  *LEG Q LLC*, 2017 WL 3780213, at *11; *see also* Fed. R. Civ. P. 26(b).

Here, the requested discovery in the proposed subpoenas is limited to discrete topics and entities relevant to the English claims.  Tait Decl. ¶ 15 (confirming the discovery sought is relevant).  The subpoenas seek a deposition of Payne, and make the same seven document requests to each Respondent relating to a single individual (Mkrtchyan) and within narrow topics related to the Campaign.  Given the limited scope of this relevant discovery, the information is proportional to the needs of the English claims, considering the importance of the issues, the potential amounts in controversy, the parties' resources and relative access to relevant information, the importance of the discovery in resolving issues, and whether the burden or expense of the discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b).  The damage that Mkrtchyan has suffered as a result of the broader Campaign exceeds $10 million (Pet's Decl. ¶ 47), much of the evidence of the Campaign is naturally in the exclusive possession of its participants (not Mkrtchyan), and discovery is needed to obtain it so that it can be used in litigation.  Payne, who sits at the helm of multiple companies and styles himself a successful Texas businessperson, lobbyist, and consultant, presumably can search his own and his companies' documents and appear for a deposition, and the discovery's limited burden or expense does not outweigh its likely benefit.  Accordingly, the fourth *Intel* factor favors granting the discovery.

## IV.    CONCLUSION

Because the Application satisfies the Section 1782 statutory requirements and the *Intel* factors favor granting discovery, the Court should grant the Application and authorize the requested discovery.

Dated:   June 16, 2025

Respectfully submitted,

/s/ *Ryan P. Hartman*

Ryan P. Hartman (Attorney-in-Charge)
Tex. Bar 24050727 / S.D. Tex. Bar 608056
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: (713) 576-2438
Email: Ryan.Hartman@arnoldporter.com

*Attorneys for Petitioner Ovik Mkrtchyan*