IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| IN RE APPLICATION OF OVIK MKRTCHYAN FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 4:25-mc-01122 |

## DECLARATION OF OVIK MKRTCHYAN

Pursuant to 28 U.S.C. § 1746, I, Ovik Mkrtchyan, declare as follows:

1. I am the claimant (plaintiff) in two proceedings I initiated in England on April 22, 2025: (1) libel proceedings against 2Trom Media Group and Viktor Tokarev; (2) libel proceedings against Radha Stirling.

2. I submit this declaration in support of my Application for an Order to Take Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782 (the "Application"). This declaration is based on my personal knowledge except where I indicated otherwise.

*Petitioner*

3. I am an entrepreneur who owns and leads multiple businesses focused on innovation, sustainability, and technology.

4. I was born in Armenia and raised in Uzbekistan, and I now reside in Europe.

5. My businesses are primarily located in the United Kingdom, Switzerland, Uzbekistan, and Latvia.

6. One of these companies, Gor Investment Limited, focuses on initiatives to combat infection in medical patients, process and dispose of hazardous waste, harness gas metallurgy technology for the production of nano powders of rare and precious metals, and train young

engineers in Uzbekistan, among other things.  *See* Exhibit 1, Gor Investment, Our Projects, available at https://gorinvestment.com/our-projects/.

7.    Gor's advisory board reflects the company's global reach and technological prowess, with members such as former U.S. Secretary of State Mike Pompeo, former Texas governor Rick Perry, and former director of the Oak Ridge National Laboratory, Dr. Thomas Zacharia.

### *Respondents*

8.    Respondent Stephen Payne is my former business associate.

9.    On information and belief, Linden Strategies, LLC ("Linden Strategies") is a consulting and lobbying firm founded by Payne and headquartered in Houston or Richmond.

10.   On information and belief, Linden Energy, LLC ("Linden Energy") is another company founded by Payne and headquartered in Houston.

11.   On information and belief, Payne also founded Linden Energy Holdings, Inc. ("Linden Holdings"), another Houston-headquartered company, and Payne holds himself out as its President & CEO.

12.   On information and belief, American LNG Services, LLC ("American LNG") is another company controlled by Payne, and it is also headquartered in Houston.

### *Relationship between Petitioner and Respondents*

13.   Over the years, my companies and I have hired Payne for services, loaned him money, and collaborated with him on projects.

14.   In July 2016, Payne, Linden Energy, and my company NRCO Engineering S.A. ("NRCO") entered into a written agreement relating to a liquefied natural gas ("LNG") project in Eastern Europe.

15.     NRCO caused more than $1 million to be tendered in support of the project.

16.     As part of the 2016 LNG transaction, Payne provided a signed promissory note personally guaranteeing the repayment of more than $1 million, backed by shares in American LNG.

17.     Ultimately, Payne told me that he could not deliver on the LNG project, but he repeatedly assured me that he would repay the funds.

18.     Payne and Linden Energy owe more than $1 million to NRCO under the relevant agreements, and NRCO is pursuing recovery separately.

19.     My relationship with Payne ended in mid-2024, around the time that I learned that Payne had secretly sent a false and disparaging letter about me to a senior figure with influence over Uzbekistan's government.

20.     Around the time that Payne was confronted about this letter, he cut ties with me and began to deny responsibility for the debt.

### *Coordinated campaign to harm Petitioner*

21.     I have been a target of an ongoing campaign by individuals and entities around the world to injure me by unlawful means—first by engineering my illegal detention in Uzbekistan, and then by disseminating false and disparaging information about me to third parties (the "Campaign").

22.     In particular, in the last two years, my adversaries' attempts to harm me through this Campaign have included a successful effort to orchestrate my unlawful detention in Uzbekistan (January-April 2024); a false and disparaging letter sent by Payne to a senior figure with influence over Uzbekistan's government (August 2024); a false and disparaging letter sent by one or more agents for Uzbek businessperson Ulugbek Shadmanov and his company, United

Cement Group (August 2024); a failed attempt to engineer my rearrest in Uzbekistan (August 2024); libelous content posted by The London Post (October 2024); libelous content posted by Stirling (January 2025); and dozens of other false and disparaging articles and posts (July 2024-present).

*Petitioner's unlawful detention in Uzbekistan*

23. In early 2024, my adversaries succeeded in orchestrating my wrongful detention in Uzbekistan, and I was held under harsh conditions for several months.

24. Officials confined me to a small cell, repeatedly interrogated me, denied access to medication and other necessities, and attempted (unsuccessfully) to extract money and false confessions.

25. While I was detained, Payne sent a letter of support to the President of Uzbekistan.

26. This letter, dated April 10, 2024, included the following statements:

- "On January 17, 2024 upon their departure from the office in Tashkent, Mr. Ovik Mkrtchyan and his daughter were detained by officers of the SGB (State Security Service)."

- "For the duration of his detainment from 17 January 2024 the officers of SGB were constantly pressing Mr. Ovik Mkrtchyan to admit guilt for crimes he did not commit."

- "Since Mr. Mkrtchyan did not admit any fictitious charges, the SGB personnel resorted to pressuring and forcing the relatives and acquaintances of Mr. Mkrtchyan to provide fictitious information that would incriminate him."

- "The true reason behind this issue is a conflict between Mr. Ovik Mkrtchyan on one hand, and" a group headed by "Shadmanov . . . on the other."

Exhibit 2, Letter from S. Payne, April 10, 2024.

27. Throughout my detention, I refused to confess to crimes I had not committed. I was ultimately released in April 2024.

28. Official records confirm that I was not convicted of any crimes.

4

*Second letter from Payne, letter from agents for Shadmanov/United Cement, and efforts to orchestrate Petitioner's rearrest (mid-2024)*

29. Following my release from detention in April 2024, my adversaries turned their efforts to damaging my reputation and laying the apparent groundwork for my rearrest.

30. In or around August 2024, Payne sent another letter to Uzbekistan, retracting his April 2024 letter in my support and falsely accusing me of serious misdeeds, including ties to Russian organized crime, threats, and extortion.

31. Also in August 2024, one or more agents for Shadmanov and his company, United Cement Group, sent a letter containing similar allegations to the Uzbek government.

32. Around the same time in mid-2024, I learned of a renewed plot to orchestrate my arrest once again.

33. Fortunately, my family and I were able to leave the country before I was rearrested, and we have resided in Europe since then.

*Disparaging online content*

34. The Campaign includes dozens of articles, posts, and other content published on hosting platforms around the world.

35. The volume of publications dramatically increased beginning around July 2024, around the time that Payne sent his disparaging letter and appears to have joined the Campaign.

*Libel proceedings in England and contemplated additional claims*

36. I seek to redress the harms caused by the Campaign in both pending and contemplated proceedings in England. On April 22, 2025, I filed civil libel claims against two Campaign participants—the owners of The London Post and Radha Stirling—and I anticipate pursuing additional claims, including claims for libel and conspiracy to injure by unlawful means, against other members of the Campaign subject to jurisdiction in England.

37. Based on the evidence gathered to date, I understand and believe that The London Post and Stirling did not act independently and in isolation; rather, they were part of the larger Campaign to harm me, my reputation, and my interests by unlawful means.

38. In both cases, I, through my English counsel, am asking the English courts to decide that the published content is part of a broader disinformation campaign designed to harm me through libel and other unlawful means.

39. Both my existing and contemplated claims will be based in part on any supporting evidence of a broader coordinated disinformation campaign and conspiracy to harm me by unlawful means that is gathered as part of this Application.

40. I intend to bring the contemplated claims imminently, and as soon as possible after obtaining further evidence in support of them and identifying individuals who would be defendants. I have already retained my existing counsel in England to represent and advise me on those claims and to file them as soon as possible.

### *Payne joined the Campaign to destroy Petitioner's reputation*

41. Based on the existing evidence gathered thus far, I understand and believe that Payne, acting individually or through his companies, is a participant in the Campaign and that Respondents accordingly possess material information about the Campaign's activities.

42. For example, beginning in mid-2024, Payne and his companies directly participated in efforts to damage my reputation and harm my interests, including sending a false and disparaging letter to a senior figure with influence over Uzbekistan's government. The letter, which is signed by Payne, is on Linden Strategies letterhead.

43. The baseless allegations in Payne's letter closely track allegations made by others who have sought to harm me. In particular, similar allegations appear in the August 2024 letter

from one or more agents for Shadmanov and United Cement, the October 2024 article published by The London Post, Stirling's January 2025 post, and online content published by hosting platforms around the world.

44. Payne's April 2024 letter calling for my release from detention reflects what I believe to be intimate knowledge of the activities of Shadmanov (whom Stirling's website identifies as her client) and United Cement (Shadmanov's company). While Payne was initially at odds with Shadmanov and United Cement—going so far as to accuse them of illegal activity in the April 2024 letter—he appears to have switched sides between April and August 2024.

45. Payne and his company, Respondent Linden Energy, owe my company NRCO more than $1 million in connection with the written agreements and promissory note signed in July 2016. Respondent American LNG provided collateral for the promissory note. Had Payne and my other adversaries succeeded in prompting my rearrest in August 2024, Payne might have been able to delay or even avoid altogether this significant financial obligation.

46. The timing of Payne's false and disparaging letter to a senior figure with influence over Uzbekistan's government aligns with the timing of other events in the Campaign, including the August 2024 letter from one or more agents for Shadmanov and United Cement, and the widespread publication of false and disparaging information about me beginning around July 2024.

47. The damage inflicted on me as a result of the broader Campaign is substantial, and I believe it to exceed $10 million.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 16, 2025.

_____
Ovik Mkrtchyan