**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE APPLICATION OF OVIK MKRTCHYAN FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 4:25-mc-1122<br>Hon. Judge Lee H. Rosenthal |
| OVIK MKRTCHYAN,<br>　　　　　　　Petitioner<br><br>v.<br><br>STEPHEN P. PAYNE, SR., LINDEN STRATEGIES, LLC, LINDEN ENERGY, LLC, LINDEN ENERGY HOLDINGS, INC. & AMERICAN LNG SERVICES, LLC,<br><br>　　　　　　　Respondents. | |

**PETITIONER OVIK MKRTCHYAN'S MOTION TO COMPEL**
**PRODUCTION OF DOCUMENTS BY RESPONDENTS**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ............................................................................................. 1

II.   BACKGROUND ............................................................................................. 1

A.    Petitioner Ovik Mkrtchyan ............................................................................ 1

B.    Respondents ................................................................................................. 2

C.    The Campaign Against Mkrtchyan ................................................................ 4

      1. Mkrtchyan's Unlawful Detention in Uzbekistan (January-April 2024) ............ 4

      2. Letter from Payne, Letter from Agents for Shadmanov/UCG, and Efforts to
      Orchestrate Mkrtchyan's Rearrest (mid-2024) ...................................................... 5

      3. Disparaging Online Content ............................................................................. 6

D.    Mkrtchyan Brought Claims for Civil Libel Against Two Defendants in England
      and Is Pursuing Additional Claims ................................................................. 6

III.  NATURE AND STAGE OF THE PROCEEDING ................................................ 8

IV.   STATEMENT OF ISSUES TO BE RULED ON BY THE COURT ....................... 10

V.    SUMMARY OF ARGUMENT .......................................................................... 11

VI.   ARGUMENT ................................................................................................ 12

A.    The Court Should Compel Respondents to Identify and Produce Responsive
      Documents ................................................................................................ 12

B.    Respondents' Objections Are Waived ............................................................. 17

C.    The Court Should Specify that a Show Cause Hearing on Contempt and
      Sanctions Will Be Held if Respondents Fail to Comply ..................................... 17

VII.  CONCLUSION ............................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases:**</u>                                                                                               <u>**Page(s):**</u>

*Am. Airlines Inc. v. Allied Pilots Ass'n,*
    228 F3d 574 (5th Cir. 2000) ...................................................................17

*A to Z Rental Ctr. v. Burris,*
    714 S.W.2d 433 (Tex. App.–Austin 1986, writ ref'd n.r.e.) ..........................3

*EB Holdings II Inc. v. Illinois Nat'l Ins. Co.,*
    2022 WL 254621 (S.D. Tex. Jan. 27, 2022) ...............................................18

*Enron Corp. Sav. Plan v. Hewitt Assocs.,*
    258 F.R.D. 149 (S.D. Tex. 2009) .................................................................11

*Grupo Mexico SAB de CV v. SAS Asset Recovery, Ltd.,*
    821 F.3d 573 (5th Cir. 2016) ................................................................10, 17

*Ibarra v. Baker,*
    338 F. App'x 457 (5th Cir. 2009) ...............................................................18

*In re HydroDive Nigeria, Ltd.,*
    2013 WL 12155021 (S.D. Tex. May 29, 2013) ...........................................11

*In re Rosenthal,*
    2008 WL 983702 (S.D. Tex. Mar. 28, 2008) ..............................................18

*In re Veiga,*
    746 F. Supp. 2d 8 (D.D.C. 2010) ...............................................................11

*Intel Corp. v. Advanced Micro Devices, Inc.,*
    542 U.S. 241 (2004) ....................................................................................10

*Isenberg v. Chase Bank USA, N.A.,*
    61 F. Supp. 2d 627 (N.D. Tex. 2009) .........................................................10

*La. Generating, LLC v. Ill. Union Ins. Co.,*
    2011 WL 6259052 (M.D. La. Dec. 14, 2011) ........................................10-11

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,*
    894 F.2d 1482 (5th Cir. 1990) ....................................................................11

*Shillitani v. United States,*
    384 U.S. 364 (1966) ....................................................................................17

*Wiwa v. Royal Dutch Petroleum Co.,*
    392 F.3d 812 (5th Cir. 2004) ......................................................................11

**<u>Statutes, Rules & Regulations</u>**

28 U.S.C. § 1782 ................................................................................................ *passim*

Del. Code tit. 6, § 18-1107 ................................................................................ *3*

Fed. R. Civ. P. 45 .............................................................................................. *passim*

Tex. Tax Code § 171.2515 ................................................................................ 3

Tex. Tax Code § 171.252 .................................................................................. 3

Pursuant to Federal Rule of Civil Procedure 45, Petitioner Ovik Mkrtchyan respectfully asks the Court to compel Stephen P. Payne, Sr. and his companies, Linden Strategies, LLC, Linden Energy, LLC, Linden Energy Holdings, Inc., and American LNG Services, LLC (the "Corporate Respondents," and collectively with Payne, "Respondents"), to produce documents responsive to Mkrtchyan's subpoenas.

## I.    INTRODUCTION

This matter arises from efforts by Mkrtchyan, the founder of a global enterprise who resides in Europe, to seek redress for an outrageous campaign against him that included his unlawful, three-month detention in Uzbekistan, and encompasses ongoing efforts to publish false and disparaging information about him, engineer his rearrest, and otherwise punish him for refusing to engage in improper activities. Mkrtchyan has filed lawsuits in the courts of England and Wales, and is pursuing additional claims and defendants there. In furtherance of this, Mkrtchyan filed an application with this Court for an order under 28 U.S.C. § 1782 authorizing him to take discovery from Respondents for use in foreign legal proceedings. ECF No. 1 (the "Application"). The Court granted the Application, allowing Mkrtchyan to serve subpoenas on Respondents. ECF No. 7.

Those subpoenas were served on June 19, but Respondents failed to comply with them. Payne served no objections, and only after inquiries by Mkrtchyan's counsel, he belatedly produced a single document while acknowledging he has others. The Corporate Respondents ignored the subpoenas entirely. Mkrtchyan asks this Court to compel Respondents to produce documents.

## II.    BACKGROUND

### A.    Petitioner Ovik Mkrtchyan

Mkrtchyan leads an established global enterprise that he founded, Gor Investment Limited. Gor encompasses a wide range of initiatives such as combatting infection in medical patients,

processing hazardous waste, harnessing gas metallurgy technology for the production of nano powders of rare and precious metals, and training young engineers in Uzbekistan. ECF No. 4, Decl. of Petitioner ("Pet's Decl.") ¶ 6, Ex. 1. Gor's advisory board reflects the company's global reach and technological prowess. Its members have included former U.S. Secretary of State Mike Pompeo, former Texas governor Rick Perry, and former director of the Oak Ridge National Laboratory, Dr. Thomas Zacharia. *Id.* ¶ 7.

Mkrtchyan is also the victim of an ongoing campaign by actors around the world to injure him by tortious and unlawful means (the "Campaign"). *Id.* ¶ 21. The Campaign first engineered his illegal detention in Uzbekistan after he refused requests from Ulugbek Shadmanov, an Uzbek cement magnate who owns United Cement Group ("UCG"), to use Mkrtchyan's U.S. political relationships for an improper purpose. Once that detention effort failed when Mkrtchyan was released, the Campaign then moved to disseminating false and disparaging information about him and efforts to engineer his rearrest. *See id.* ¶ 22.

Mkrtchyan has begun to uncover the full scope of the Campaign and seek redress for its harms. Some participants in this Campaign are known—for example, Mkrtchyan recently brought civil libel claims in England against the owners of *The London Post* and Radha Stirling, who published defamatory content about him as part of the Campaign—while others have not yet been identified, or the full scope of their activities is not yet known.

### B.    Respondents

Respondent Payne is a former business associate of Mkrtchyan's. *Id.* ¶ 8. Although Payne styles himself as a successful Texas businessperson, lobbyist, and consultant whose ventures include overseas energy projects, the reality is anything but. Payne has left a long trail of broken promises, unpaid debts, failed ventures, and breaches of trust in virtually every corner of his life,

resulting in numerous lawsuits and sizable judgments against him from banks, noteholders, casinos, and business associates.[1]

The Corporate Respondents are a series of companies that Payne owns and controls. *See* ECF No. 3, Declaration of Ryan Hartman ("Hartman Decl."), ¶¶ 5, 8-12, Exs. 3, 6-10. All have had their corporate registrations revoked for failure to pay state taxes. *Id.* ¶¶ 6-7, 10, 12, Exs. 4-5, 8, 10.[2] Nonetheless, Payne holds himself out as President of Linden Energy Holdings, Inc. (*see id.* ¶¶ 8-9, Exs. 6-7) and Linden Energy, LLC (*see* ECF No. 4, Pet's Decl. ¶ 10). The former's website describes it as "a U.S.-based, internationally focused energy development company" that was "[f]ounded in 2013 by Stephen Payne" and has "projects under development in Europe, Eastern Europe, and South Asia." ECF No. 3, Hartman Decl., ¶ 8, Ex. 6. Payne also describes himself as CEO of Linden Strategies, LLC, "a government relations and business development firm providing strategic analysis and advisory to domestic and international clients, including

---

[1] *See, e.g.*, No. 2009-73282, *Suzer Group v. Payne et al.*, 189th District Court of Harris County ($275,000 judgment for scheme to conceal and fraudulently transfer assets among Payne's thinly-capitalized companies); No. 2009-69050, *Central Bank v. Payne et al.*, 61st District Court of Harris County ($197,000 judgment for failure to repay promissory note); No. 2010-46995, *MGM Grand Hotel, LLC v. Payne*, 281st District Court of Harris County ($130,000 judgment from a casino); No. 13-cv-2332, *Marsoft v. Payne et al.* (S.D. Tex. 2015) (Lake, J.) ($1.6 million judgment for wrongdoing on an LNG project); No. 2013-07061, *John Speer et al. v. Payne et al.*, 165th District Court of Harris County (settlement over another LNG project after the court denied summary judgment for Payne's company); No. 955559, *First Victoria Nat'l Bank v. Payne*, Harris County Civil Court at Law No. 4 ($108,000 unpaid judgment that bank pursued from 2010-2020); No. 23-CCR-236089, *State v. Payne*, Ft. Bend County Court at Law No. 3 (2024 guilty plea for violently assaulting spouse).

[2] Under Texas and Delaware law, parties can generally seek judicial relief against inactive or forfeited companies. *See, e.g.*, Tex. Tax Code §§ 171.2515, 171.252; Del. Code tit. 6, § 18-1107(m). Moreover, Payne can be responsible for the Corporate Respondents' obligations to the extent he has continued to operate under their names while their status was inactive or forfeited. *See, e.g.*, Tex. Tax Code § 171.255; *A to Z Rental Ctr. v. Burris*, 714 S.W.2d 433, 436 (Tex. App.–Austin 1986, writ ref'd n.r.e.).

sovereign nations," and "specialize[s] in government relations, strategic communications, business advisory, and political consulting." *Id.* ¶¶ 4-5, Exs. 2-3.  Payne also controls American LNG Services, LLC and holds himself out as its President  *Id.* ¶¶ 11-12, Exs. 9-10.

Payne appears to have joined the Campaign no later than mid-2024.  After years of amicable business relations with Mkrtchyan, Payne abruptly changed course and joined with Mkrtchyan's adversaries, secretly sending an unsolicited letter to the President of Uzbekistan that falsely accused Mkrtchyan of crimes and other serious misconduct.  ECF No. 4, Pet's Decl. ¶¶ 30, 42.  The allegations in Payne's letter closely track false claims about Mkrtchyan that have appeared in paid content distributed by participants in the Campaign around the world.  *Id.* ¶ 43.  After Payne was confronted with his own conduct, he quickly cut ties with Mkrtchyan and began to deny responsibility for a debt of well over $1 million that he owes Mkrtchyan's companies.  *Id.* ¶ 20.

### C.    The Campaign Against Mkrtchyan

Mkrtchyan's extensive business interests have, at times, made him a target.  In the last two years, his adversaries' attempts to harm him have included a successful effort to orchestrate his unlawful detention in Uzbekistan (January-April 2024); a false and disparaging letter sent by Payne to the President of Uzbekistan (August 2024); a similar false and disparaging letter sent by agents for Shadmanov and UCG (August 2024); a failed attempt to engineer Mkrtchyan's rearrest by Uzbek authorities (August 2024); libelous content posted by *The London Post* (October 2024); libelous content posted by Stirling (January 2025); and dozens of other false and disparaging "articles" and posts (July 2024-present).  *Id.* ¶¶ 21-22.

### 1.    *Mkrtchyan's Unlawful Detention in Uzbekistan (January-April 2024)*

In January 2024, Mkrtchyan's adversaries succeeded in orchestrating his wrongful detention in Uzbekistan, and he was held under harsh conditions for several months.  *Id.* ¶ 23.  Officials confined him to a small cell, repeatedly interrogated him, denied him access to

medication and other necessities, and attempted unsuccessfully to extract money and false confessions from him. *Id.* ¶ 24.

While Mkrtchyan was detained, Payne sent a letter of support to the President of Uzbekistan. *Id.* ¶ 26, Ex. 2. This letter, dated April 10, 2024, included the following statements:

- "On January 17, 2024 upon their departure from the office in Tashkent, Mr. Ovik Mkrtchyan and his daughter were detained by officers of the SGB (State Security Service)."

- "For the duration of his detainment from 17 January 2024 the officers of SGB were constantly pressing Mr. Ovik Mkrtchyan to admit guilt for crimes he did not commit."

- "Since Mr. Mkrtchyan did not admit any fictitious charges, the SGB personnel resorted to pressuring and forcing the relatives and acquaintances of Mr. Mkrtchyan to provide fictitious information that would incriminate him."

- "The true reason behind this issue is a conflict between Mr. Ovik Mkrtchyan on one hand,  and" a group headed by "Shadmanov . . . on the other."

*Id.* Throughout his detention, Mkrtchyan refused to confess to crimes he had not committed. *Id.* ¶ 27. He was released in April 2024, and was not convicted of any crimes. *Id.* ¶¶ 27-28.

### 2.    Letter from Payne, Letter from Agents for Shadmanov/UCG, and Efforts to Orchestrate Mkrtchyan's Rearrest (mid-2024)

Following Mkrtchyan's release from detention in April 2024, Mkrtchyan's adversaries turned their efforts to damaging his reputation with Uzbek officials and attempting to lay the groundwork for his rearrest. *Id.* ¶ 29.

In or around August 2024, Payne sent another letter to the President of Uzbekistan, retracting his April 2024 letter in support of Mkrtchyan and falsely accusing Mkrtchyan of serious misdeeds, including ties to Russian organized crime, threats, and extortion. *Id.* ¶ 30. Also in August 2024, an agent for Shadmanov/UCG sent a letter containing similar allegations to Uzbekistan's President and another Uzbek official. *Id.* ¶ 31.

Around the same time in mid-2024, Mkrtchyan learned of a renewed plot to orchestrate his arrest. *Id.* ¶ 32.  He and his family were able to leave the country before he was rearrested, and they have resided in Europe since then. *Id.* ¶ 33.

### 3. Disparaging Online Content

The Campaign has also included dozens of purported articles, posts, and other content published on hosting platforms around the world. *Id.* ¶ 34.  The volume of publications dramatically increased beginning around July 2024, around the time Payne joined the Campaign and sent his disparaging letter. *Id.* ¶ 35.

### D. Mkrtchyan Brought Claims for Civil Libel Against Two Defendants in England and Is Pursuing Additional Claims

Mkrtchyan seeks to redress the harms caused by the Campaign in both pending and contemplated proceedings in England.  In April 2025, Mkrtchyan initiated civil libel proceedings against two sets of defendants in the King's Bench Division of the High Court of England and Wales.  ECF No. 5, Declaration of Nigel Tait ("Tait Decl.") ¶ 1.

The first suit is against 2Trom Media Group, Viktor Tokarev, and Moscow Media Group, which own an online content hosting platform that calls itself "The London Post." *Id.* ¶ 9.  Although its name suggests news media, it posts a wide range of content, much of which appears to be the result of paid placements or to derive directly from press releases or other public relations activities.  The second suit is against Radha Stirling (*id.* ¶ 10), a public relations consultant who touts herself as running "extraordinarily slick - and convincing - PR campaign[s]" through organizations she founded with seemingly benevolent names, such as IPEX (Interpol and Extradition) Reform, Detained in Dubai, and Due Process International.  ECF No. 3, Hartman Decl. ¶ 13, Ex. 11.  Mkrtchyan is asking the English courts to decide that the content published

against him by these two groups and others is part of the broader Campaign against him.  ECF. No. 5, Tait Decl., ¶ 13, Exs. 3-4.

Mkrtchyan is also pursuing evidence for additional contemplated claims, including claims for libel and tortious conspiracy, against participants in the Campaign who may be subject to jurisdiction in England.  *See id.* ¶ 18; ECF No. 4, Pet's Decl. ¶ 36.

Many of the other participants in the Campaign are unknown, and the requested discovery will be critical to uncovering their identities and their role in the Campaign.  Others, such as Shadmanov and some of his agents, are known, but the full scope of their involvement in the Campaign is not.  The relationships between the various actors and their activities—Payne and his companies, *The London Post*, Stirling and her client Shadmanov, Shadmanov's company UCG, and Shadmanov's other agents—suggest that their efforts are coordinated and motivated by a shared intent to harm Mkrtchyan.

The existing evidence also suggests that Payne, acting individually or through his companies, is a participant in the Campaign and that Respondents accordingly possess material information about the Campaign's activities.  For example, the following links Payne to the actions of *The London Post*, Stirling, and other known Campaign participants:

- Beginning in mid-2024, Payne and his companies directly participated in efforts to damage Mkrtchyan's reputation and harm his interests, including sending a false and disparaging letter to the President of Uzbekistan.  The letter, which is signed by Payne, is on Linden Strategies letterhead.  ECF. No. 4, Pet's Decl. ¶ 42.

- The allegations in Payne's letter closely track allegations made by others who have sought to harm Mkrtchyan.  In particular, similar allegations appear in the August 2024 letter from Shadmanov/UCG's agent, the October 2024 article published by *The London Post*, Stirling's January 2025 post, and online content published by hosting platforms around the world.  *Id.* ¶ 43.

- Payne's April 2024 letter calling for Mkrtchyan's release from detention reflects intimate knowledge of the activities of Shadmanov (Stirling's client) and UCG (Shadmanov's company).  While Payne was initially at odds with Shadmanov and

UCG—going so far as to accuse them of illegal activity in the April 2024 letter—he appears to have switched sides between April and August 2024.  *Id.* ¶ 44.  Payne's abrupt reversal suggests that he was recruited to the Campaign between April and August 2024.

- Payne and Respondent Linden Energy owe one of Mkrtchyan's companies well over $1 million under a promissory note signed in July 2016.  Respondent American LNG provided collateral for that note.  Had Payne and Mkrtchyan's other adversaries succeeded in prompting his rearrest in August 2024, Payne may have been able to delay or avoid this significant financial obligation.  *Id.* ¶ 45.

- The timing of Payne's false and disparaging letter aligns with the timing of other events in the Campaign, including the August 2024 letter from Shadmanov/UCG's agent and the widespread publication of false and disparaging information about Mkrtchyan beginning around July 2024.  *Id.* ¶ 46.

It is no coincidence that Payne—a Texas businessperson with no particular history in Uzbekistan—chose to write a letter to the country's President to accuse Mkrtchyan of misconduct. Mkrtchyan thus seeks documents from Payne and his companies about their role in the Campaign and interactions with *The London Post*, Stirling, Shadmanov, UCG, and other participants in the Campaign.  This information is highly relevant to both the pending and contemplated proceedings in England, as confirmed by Mkrtchyan's counsel there.  ECF. No. 5, Tait Decl. ¶¶ 15, 19.

## III.    NATURE AND STAGE OF THE PROCEEDING

On June 16, 2025, Mkrtchyan filed his Application with the Court under 28 U.S.C. § 1782. ECF No. 1.  On June 18, the Court granted the Application and allowed Mkrtchyan to serve subpoenas on Respondents under Rule 45.  ECF No. 7.

On June 19, Mkrtchyan served five document subpoenas (the "Subpoenas"), one for each Respondent.[3]  Motion ("Mot.") Ex. 1, Subpoenas; Mot. Ex. 2, Returns of Service.  The Subpoenas are limited to discrete topics and entities relevant to Mkrtchyan's pending and contemplated claims

---

[3] Mkrtchyan also issued a subpoena for Payne's deposition to take place after document production is complete.  That subpoena is not the subject of this motion, and Mkrtchyan reserves all rights.

in the English courts.  The Subpoenas make the same seven document requests to each Respondent relating to a single individual (Mkrtchyan) and within narrow topics.

The Subpoenas set July 21 as the production deadline, more than a month after they were served.  But Respondents did not produce any documents by the specified deadline and did not otherwise respond to the Subpoenas within the 14-day timeframe required by Rule 45(d)(2)(B).

On July 22, the undersigned counsel called Payne and then emailed a letter to him stating that Respondents' production was overdue.  Mot. Ex. 3, Letter from R. Hartman (Jul. 22, 2025).  In response, Payne sent an email attaching a single one-page document.  Mot. Ex. 4, Email from S. Payne (Jul. 22, 2025), at 3.  While acknowledging that he has documents responsive to at least four of the seven requests, he has yet to produce anything else.  *Id.* at 1.  Moreover, his responses to all requests were made to the best of his "ability and memory," apparently without undertaking any search of his own files or those of the Corporate Respondents.  *Id.*  No response was provided on behalf of the Corporate Respondents.

On July 23, the undersigned counsel responded to Payne, cataloguing these deficiencies.  Mot. Ex. 5, Letter from R. Hartman (Jul. 23, 2025).  On July 28, Payne represented that he was "in the process of engaging" a lawyer, who would "do a thorough search of our records in order to get you what was requested," and that counsel will "coordinate the timing for the record search and get you the requested information."  Mot. Ex. 6, Emails with S. Payne and B. Ettinger (Jul. 28-29, 2025), at 2.  That same day, the undersigned counsel asked this lawyer to confirm he now represents Payne and the Corporate Respondents and provide his availability for a call.  *Id.*  The lawyer responded that he would "evaluate [his] representation of [Payne]," and that he "do[es] not represent the other parties you mentioned in your email and have never had any contact with

them." *Id.* at 1.  On July 29, the undersigned counsel again asked this lawyer to confirm whether he represents Payne, but has received no response.  *Id.*

Thus, to date, Payne provided no objections and just one page in response to seven document requests, and the Corporate Respondents have provided no response.  Accordingly, Mkrtchyan brings this motion to compel Respondents' compliance.

## IV.    STATEMENT OF ISSUES TO BE RULED ON BY THE COURT

**Issue No. 1. Whether to compel Respondents to produce all documents responsive to the Subpoenas.**

Congress enacted 28 U.S.C. § 1782 "to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  Section 1782 provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a).  Once a court authorizes discovery under Section 1782, "the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure," unless the court prescribes otherwise.  *Id.* § 1782(a); *see also Grupo Mexico SAB de CV v. SAS Asset Recovery, Ltd.*, 821 F.3d 573, 574 (5th Cir. 2016).

Failure to serve timely, written objections to discovery requests, whether made by subpoena or under Rule 34, generally waives all objections. *See, e.g.*, *Grupo Mexico SAB de CV*, 821 F.3d at 576-77 (affirming trial court's grant of a motion to compel and refusal to consider untimely objections to a subpoena issued under Section 1782); *Isenberg v. Chase Bank USA, N.A.*, 661 F. Supp. 2d 627, 629 (N.D. Tex. 2009); *La. Generating, LLC v. Ill. Union Ins. Co.*, No. 10-516-JJB-SCR, 2011 WL 6259052, at *2 (M.D. La. Dec. 14, 2011) ("Courts within the Fifth Circuit

have consistently held that failure to serve timely objections to a Rule 45 subpoena generally results in a waiver of all grounds for objection, including privilege.").

Even where objections are timely raised, the party resisting discovery must (1) show specifically how each discovery request is irrelevant or otherwise objectionable, *see, e.g.*, *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990); (2) substantiate any claim of privilege, *Enron Corp. Sav. Plan v. Hewitt Assocs.*, 258 F.R.D. 149, 160 (S.D. Tex. 2009); and (3) "demonstrate 'that compliance with the subpoena would be unreasonable and oppressive,'" *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (citation omitted). Relevancy under Section 1782 is "broadly construed and encompasses any material that bears on, or that reasonably leads to other matters that could bear on, any issue that is or may be in the case." *In re HydroDive Nigeria, Ltd.*, No. 13-mc-0477, 2013 WL 12155021, at *3 (S.D. Tex. May 29, 2013) (quoting *In re Veiga*, 746 F. Supp. 2d 8, 19 (D.D.C. 2010)).

Under Rule 45, "The court for the district where compliance is required . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g).

## V.   SUMMARY OF ARGUMENT

The Court should order Respondents to produce all responsive documents promptly. Respondents did not timely (or otherwise) object to the Subpoenas, thus waiving any objections. Each document request is relevant to the pending and contemplated proceedings in the English courts. Payne's July 22 production of one single document was deficient and belated, and the Corporate Respondents have not provided any response to date. Accordingly, the Court should order Respondents to produce all responsive documents within fourteen calendar days. If any Respondents do not comply with the Court's order, the Court should convene a show cause hearing

at which it can hold them in contempt and impose other sanctions, including but not limited to payment of Mkrtchyan's attorneys' fees.

## VI.    ARGUMENT

### A.    The Court Should Compel Respondents to Identify and Produce Responsive Documents

The Subeponas are narrowly tailored and seek highly relevant information related to the Campaign against Mkrtchyan and Respondents' role in it—topics that are subject to the pending and contemplated proceedings in the English courts, as further confirmed by the declaration of Mkrtchyan's English counsel. *See* ECF No. 5, Tait Decl. ¶¶ 15, 19.   The Subpoenas limited all of the requests to September 1, 2023, forward.  To date, Respondents have failed to comply with the Subpoenas and produce responsive records.  Therefore, the Court should compel them to do so.

*Request No. 1: All Documents and Communications exchanged with, or relating to, The London Post, 2Trom Media Group, Viktor Tokarev, Moscow Media Group, Radha Sterling, IPEX (Interpol and Extradition) Reform, Detained in Dubai, Due Process International, or any officers, directors, employees, or agents of those organizations or individuals.*

This request seeks communications beginning September 1, 2023, with individuals and entities that are either defendants in the English litigation or organizations controlled by those defendants.  Given Respondents' participation in this Campaign, the requested discovery is relevant to demonstrating the broader disinformation campaign and conspiracy to harm Mkrtchyan that is at issue in the pending and contemplated English proceedings.

In response, Payne did not undertake any search, but simply stated that he did not have responsive documents to the best of his "ability and memory."  Mot. Ex. 4 at 1.  Payne's statement does not satisfy his discovery obligations, and the Corporate Respondents have provided no response at all.

*Request No. 2*: *All Documents and Communications that refer to or relate to Petitioner.*

This document request—again limited to September 1, 2023, forward—seeks information that Respondents would have created or exchanged regarding Mkrtchyan during a highly relevant time to the Campaign in which Respondents should have otherwise had limited communications about him.  In particular, this time period (1) begins after Mkrtchyan's refusal to use his U.S. political relationships for an improper purpose, and shortly before his illegal detention in Uzbekistan, and (2) encompasses the period in which Payne wrote his secret, disparaging letter to the President of Uzbekistan as part of the Campaign, and in which other defamatory communications about Mkrtchyan have continued to be published.  Because Mkrtchyan does not know the full scope of individuals with whom Respondents communicated about Mkrtchyan as part of the Campaign, this request asks for documents that refer or relate to Mkrtchyan.  Moreover, Mkrtchyan's last name is not particularly common in the U.S., which facilitates easy searching.

In his belated response, Payne acknowledged having responsive documents, while noting that he had known Mkrtchyan for "many years" and asking if there was something more specific Mkrtchyan was seeking.  Mot. Ex. 4 at 1.  Mkrtchyan's counsel replied that the Subpoenas only call for the production of documents within a limited time period of September 1, 2023, forward.  Mot. Ex. 5 at 2.  This limited period is sufficient to narrow Respondents' search substantially, especially given that Respondents should have had few communications about Mkrtchyan at that time.

Nonetheless, to date, Payne has not produced any documents, nor have the Corporate Respondents responded.

*Request No. 3: All Documents and Communications that relate to any news articles, blog posts, online content, letters, investigation summaries, or reports regarding Petitioner.*

This request similarly seeks materials that are relevant to Mkrtchyan's pending and contemplated English claims. Mkrtchyan sued *the London Post* and Stirling in the English courts for libel. The libelous content at issue in the English courts largely tracks the allegations contained in the unsolicited letter Payne sent to the President of Uzbekistan accusing Mkrtchyan of crimes and other serious misconduct, the unsolicited letter containing a purported investigation report that an agent of Shadmanov/UCG also sent the President around the same time as Payne's letter, and other purported news articles, blog posts, and online content issued as part of the Campaign. Thus, the documents and communications relating to news articles, blog posts, online content, letters, investigation summaries, or reports *about Mkrtchyan* are relevant to his pending and contemplated claims in the English courts.

In response, Payne acknowledged that he has responsive records. Payne stated that he communicated with a journalist based in England regarding Mkrtchyan, but he did not produce any communications with this individual. Mot. Ex. 4 at 1. To date, Payne has not produced any documents in response to this request, and the Corporate Respondents have not responded at all.

*Request No. 4: All Documents and Communications exchanged with, or relating to: Ulugbek Shadmanov; United Cement Group or its affiliates or subsidiaries; or the officers, directors, agents, employees, attorneys, or representatives of the foregoing, including but not limited to Stephen Akard or his firm.*

This request also seeks highly relevant information. Payne's letter to the President of Uzbekistan closely tracks the allegations contained in another unsolicited letter sent around the same time by Shadmanov/UCG's agent Stephen Akard, and that are at issue in the pending and contemplated English claims. Both letters and the online posts at issue in the Campaign accuse Mkrtchyan of serious misdeeds, including ties to Russian organized crime, threats, and extortion. Thus, the request seeks relevant evidence showing Respondents' communications with and about

14

other participants in the Campaign, such as Shadmanov, UCG, and their representatives, during a time period that is highly relevant to the Campaign.

In response, Payne acknowledged that he was "introduced to the name Ulugbek Shadmanov and United Cement Group … as early as 2022 or 2023," but that he has not personally "spoken" with them.  Mot. Ex. 4 at 1.  This incomplete statement, also made without any search of documents, is too narrow to address this request, which encompasses any responsive documents and communications by Payne, any of the Corporate Respondents, and any of their respective employees or other representatives.  To date, Payne has not produced any documents in response to this request, and the Corporate Respondents have not responded at all.

*Request No. 5: All Documents and Communications relating to Petitioner's detention in Uzbekistan, plans to detain Petitioner and/or charge Petitioner with crimes, or a desire to detain Petitioner and/or charge Petitioner with crimes.*

This document request is relevant to Mkrtchyan's pending and contemplated English claims, and Payne acknowledges having materials responsive to it.  In April 2024, Payne sent a letter to the Uzbek President calling for the release of Mkrtchyan from unlawful detention.  A few months later, Payne abruptly changed his position, retracted his April letter, and baselessly accused Mkrtchyan of crimes.  Around the same time, Mkrtchyan learned about a new attempt to orchestrate his rearrest in Uzbekistan.

In response, Payne acknowledged having responsive documents, but did not produce anything.  The Corporate Respondents have not responded at all.

*Request No. 6: All Documents and Communications reflecting any monetary or other compensation offered to, promised to, or received by You for activities that relate to Petitioner.*

The request seeks relevant information about any compensation Respondents have received for activities related to Mkrtchyan (e.g., their participation in the Campaign) during the limited period of September 1, 2023, forward that is relevant to the Campaign.  The request

includes any compensation Respondents received in connection with Payne's disparaging letter that was sent as part of the Campaign.

In response, Payne provided one document he claimed was responsive, but did not address whether other responsive documents exist. Mot. Ex. 4 at 3. The Corporate Respondents have not responded.

*Request No. 7*: *All Documents and Communications relating to any letter You sent in 2024 or 2025 regarding Petitioner.*

This request likewise seeks highly relevant information about any letters Respondents sent in 2024 or 2025 regarding Mkrtchyan, including but not limited to the secret, disparaging letter Payne sent to the President of Uzbekistan.

In response, Payne claimed that Mkrtchyan "is already in possession of documents responsive to" this request. Mot. Ex. 4 at 1. Mkrtchyan's discovery of the letter that Payne tried to conceal as part of the Campaign does not render the letter and any communications about it irrelevant, or otherwise excuse Payne's obligation to produce these documents. To the contrary, this letter is part of the Campaign, and both the letter and communications about it—for example, communications in which Respondents were asked to write it or otherwise discussed writing it, discussed its content with others, engaged others to assist in writing it, or sent copies of it to others—are relevant to the pending and contemplated English litigation about the Campaign. Moreover, this request also requires Respondents to produce other letters about Mkrtchyan in 2024 and 2025, and any communications and documents relating to those letters. Moreover, to the extent Respondents were sending disparaging letters about Mkrtchyan to *other* third parties during this limited timeframe of the Campaign, this is highly relevant to the English litigation as it provides information about the actions, scope, and participants in the Campaign that is at issue there. *See* ECF No. 5, Tait Decl. ¶¶ 15, 19.

16

Payne has provided no documents, and the Corporate Respondents have not responded. The Court should order Respondents to produce all responsive documents.

### B.    Respondents' Objections Are Waived

The Court should order Respondents to comply for the additional reason that Respondents have waived any objections.  Respondents were served with the Subpoenas over seven weeks ago. They did not move to quash or file any objections within the 14-day deadline in Rule 45(d). Instead, 19 days after objections were due, one day after the production was due, and following a call and letter from the undersigned counsel, Payne provided a single, one-page document and deficient written responses.  Then, five days after the undersigned counsel wrote Payne again regarding this deficient response, Payne represented on July 28 that he would do a "thorough search of our records in order to get what was requested."  Mot. Ex. 6 at 2.  The Corporate Respondents never responded.

As a result, any objections they might have are now waived.  *See Grupo Mexico SAB de CV*, 821 F.3d at 576-77.  The Court should order Respondents to produce all documents and information responsive to the Subpoenas.

### C.    The Court Should Specify that a Show Cause Hearing on Contempt and Sanctions Will Be Held if Respondents Fail to Comply

Under Rule 45, "The court for the district where compliance is required . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it."  Fed. R. Civ. P. 45(g); *see also Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."); *Am. Airlines Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000) (civil contempt proceedings are appropriate to "coerce the defendant into compliance with the court's order" or "compensate the complainant for losses sustained").

Courts in this district have held a subpoena recipient in contempt under Rule 45 for failure to comply with a subpoena and have awarded the party enforcing the subpoena its attorneys' fees. *See, e.g.*, *EB Holdings II Inc. v. Illinois Nat'l Ins. Co.*, No. 4:21-mc-02650, 2022 WL 254621, at *2 (S.D. Tex. Jan. 27, 2022); *In re Rosenthal*, No. CIV.A. H-04-186, 2008 WL 983702, at *9 (S.D. Tex. Mar. 28, 2008), *rev'd on other grounds*, *Ibarra v. Baker*, 338 F. App'x 457 (5th Cir. 2009).

Should the Court grant this motion, Mkrtchyan asks that the Court specify that if Respondents do not comply with the order, the Court will convene a show cause hearing at which it may hold those Respondents in contempt, impose sanctions (including but not limited to payment of Mkrtchyan's attorneys' fees and expenses incurred in bringing the Motion or otherwise enforcing the Subpoenas), or grant any other appropriate relief to Mkrtchyan. A proposed form of order is attached.

## VII.   CONCLUSION

For these reasons, the Court should order Respondents to produce all documents and information responsive to the Subpoenas pursuant to the definitions and instructions contained in them, and enter the attached form of order specifying next steps if Respondents do not comply.

Dated:   August 11, 2025                    Respectfully submitted,

/s/ *Ryan P. Hartman*
_____
Ryan P. Hartman (Attorney-in-Charge)
Tex. Bar 24050727 / S.D. Tex. Bar 608056
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: (713) 576-2438
Email: Ryan.Hartman@arnoldporter.com

*Attorneys for Petitioner Ovik Mkrtchyan*

## CERTIFICATE OF CONFERENCE

I hereby certify that beginning July 21, 2025, I made multiple attempts to confer in good faith with Respondents to resolve the issues in this motion, but was unable to resolve them for the reasons outlined in this motion.

/s/ *Ryan P. Hartman*
Ryan P. Hartman

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2025, I instructed a process server to serve a copy of this motion and all exhibits on all opposing parties on the dates indicated by the process server's returns, and will file those returns with the Court.

Stephen P. Payne, Sr.
6806 Country Lane
Richmond, Texas 77406

Linden Strategies, LLC, Linden Energy LLC
Linden Energy Holdings, Inc. & American LNG Services, LLC
By serving any authorized representative, including their registered agent,
or their President:
Stephen P. Payne, Sr.
6806 Country Lane
Richmond, Texas 77406

/s/ *Ryan P. Hartman*
Ryan P. Hartman

19