IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE APPLICATION OF OVIK MKRTCHYAN FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 4:25-mc-1122<br>Hon. Judge Lee H. Rosenthal |
| OVIK MKRTCHYAN,<br>　　　　　　Petitioner<br>v.<br>STEPHEN P. PAYNE, SR., LINDEN STRATEGIES, LLC, LINDEN ENERGY, LLC, LINDEN ENERGY HOLDINGS, INC. & AMERICAN LNG SERVICES, LLC,<br>　　　　　　Respondents. | |

**PETITIONER OVIK MKRTCHYAN'S
MOTION FOR CONTEMPT**

Petitioner Ovik Mkrtchyan files this Motion for Contempt seeking to have Respondents Stephen P. Payne, Linden Strategies, LLC, Linden Energy, LLC, Linden Energy Holdings, Inc., and American LNG Services, LLC (collectively, "Respondents") held in contempt for violating two orders of this Court dated September 2, 2025 (ECF No. 12) and October 9, 2025 (ECF No. 23).

Respondents have been resisting compliance with duly-issued subpoenas for five months. Respondents' dilatory tactics included, among others, repeated failures to respond to the subpoenas, subsequent promises to produce documents and repeated breaches of those promises, failure to respond to the motion to compel, failure to appear at the Court's hearing on the motion to compel, failure to furnish a privilege log on time, an unfounded motion for in-camera review,

and ultimately failure to produce ***all*** responsive records in violation of this Court's two orders. Because Respondents have failed to comply with this Court's orders and produce all documents responsive to the subpoenas, Respondents should be held in contempt until they do so.

## I. NATURE AND STAGE OF THE PROCEEDINGS

In June 2025, Petitioner Ovik Mkrtchyan filed an application for an order permitting him to serve subpoenas pursuant to 28 U.S.C. § 1782 to obtain discovery for use in foreign legal proceedings. *See* ECF No. 2, Memo. of Law in Support of Application. Mkrtchyan's application arose from an ongoing campaign by persons around the world to injure him by unlawful means, first by engineering his illegal detention in Uzbekistan for three months, and then after he was cleared of false charges and released, by disseminating false and disparaging information about him in an attempt to engineer his rearrest. *Id.* at 1. Respondent Stephen Payne and his companies joined this campaign in mid-2024 when Payne sent a false and disparaging letter to the President of Uzbekistan about Mkrtchyan (the "August 2024 letter"). This closely tracked the allegations made by other participants in the campaign against whom Mkrtchyan is now pursuing pending and contemplated claims. *Id.* at 1-2, 7-11. Mkrtchyan has since learned that Payne's letter was prompted and coordinated by Joe Fleming, the CEO of Straife LLC. Fleming, another participant in the campaign, sent a secret report to the President a week earlier making similar false and disparaging allegations about Mkrtchyan. Fleming then worked with Payne to have him send his letter a week later, in order to create the false appearance of two independent reports that corroborated one another. The evidence has now revealed that Fleming did so on behalf of Ulugbek Shadmanov, an individual responsible for Mr. Mkrtchyan's unlawful detention. Fleming and Payne then worked to have false and derogatory articles published that would make the same claims in order to lend credibility to their letters and harm Mkrtchyan.

This Court granted the application in July 2025, and Mkrtchyan then served the subpoenas at issue. After Respondents failed to respond to them, Mkrtchyan filed a motion to compel.

On September 2, 2025, the Court granted Mkrtchyan's motion to compel. ECF No. 12. The Court set a September 23 deadline for Respondents to produce "***all*** documents and information responsive to the subpoenas." *Id*. at 2 (emphasis added). On September 22 and 23, Respondents produced a total of 175 pages of documents. *See* ECF Nos. 14 & 15. Respondents did not inform undersigned counsel whether their production was complete or whether any documents were withheld and on what ground. Nor did Respondents serve a privilege log (even though their deadline for doing so had long since passed). Instead, on September 24, one day after Respondents' production was due, Respondents filed a motion for in-camera review of responsive documents that they had withheld. ECF No. 16 at 2.

On October 9, 2025, the Court held a hearing and denied Respondents' motion. ECF No. 23. The Court's October 9 Order specifically stated:

> The Court further ORDERS that ***if Respondents do not comply fully with this Court's order*** of September 2, 2025 (the "Original Order"), by 5:00 p.m. on the first business day after this order is entered [i.e., October 13], ***by producing all documents and information responsive to the subpoenas*** referenced in the Original Order, ***the Court will promptly convene a hearing at which (1) Respondents shall show cause why they should not be held in contempt and (2) the Court will determine any appropriate compensatory award of attorneys' fees to Petitioner for enforcing the Court's Original Order and award any other relief as appropriate***.

*Id*. (emphasis added).

On October 12, 2025, the undersigned sent a letter to Respondents' counsel providing the examples of deficiencies in Respondents' September production of documents. Ex. 1, Letter From R. Hartman (Oct. 12, 2025). The undersigned also informed Respondents' counsel that the deadline for compliance with the Court's Order was October 13 at 5:00 p.m., or else Mkrtchyan would have no choice but to seek relief from the Court, including the relief outlined in the October

3

9 Order. *Id.* Counsel for Respondents informed the undersigned that he would work to produce responsive records.

On October 28 – 15 days after the Court's deadline – Respondents produced certain documents, but continued to withhold other records at the same time. In particular, Respondents did not produce the following:

1) all documents and communications related to the August 2024 letter Respondents had sent to the President of Uzbekistan that is at the core of these proceedings;

2) responsive documents and communications between Payne and his staff, or with Straife and Fleming (who worked with Payne and his staff to write that letter and align it to the false report that they had secretly transmitted to the President the week before);

3) responsive documents from other messaging platforms beyond Payne's email (*e.g.*, text messages, WhatsApp, Signal, Telegram); and

4) the full set of responsive communications between Respondents and a reporter to whom Payne sent false and derogatory allegations about Mkrtchyan seeking to have negative articles published as part of the campaign.

That same day, the undersigned counsel wrote Respondents' counsel: "It is evident from your clients' production that they are continuing to withhold responsive communications with Joe Fleming and Straife, including communications related to the undated 2024 letter. When will they be producing these communications? If your clients assert that they are entitled to withhold them, please state the basis for this." Ex. 2, Email from R. Hartman (Oct. 28, 2025). Six weeks later, Respondents still have not provided any substantive response.

Since then, Mkrtchyan has uncovered even more evidence that Respondents have been withholding records responsive to the subpoenas. Payne recently disclosed that he regularly uses non-email platforms, including Signal and WhatsApp, and preserves entire chatlogs and saved messages from them. Payne also admitted that these chatlogs and saved messages contain messages about his August 2024 letter, the false allegations in that letter, Mkrtchyan's wrongful

4

detention in Uzbekistan, one of the key individuals responsible for that detention (Shadmanov), and numerous other matters responsive to Respondents' document requests.

But Respondents have produced virtually no Signal, WhatsApp, or other text messages in response to the subpoena, nor have they produced internal emails between Payne and his staff. For example, they have not produced any messages between Payne and Logan Somera—an executive at Payne's companies who worked closely with Payne and communicated with Straife, Fleming, and Payne about Payne's August 2024 letter. Nor have they produced messages with Straife or Fleming. It is apparent from Respondents' production to date that these messages exist and are clearly responsive to the subpoenas, including Request No. 7 (all communications "relating to any letter you sent in 2024 or 2025 regarding Petitioner"), No. 4 (all communications relating to Shadmanov, his company United Cement Group, or their agents), and No. 2 (all communications that "refer to or relate to Petitioner"). *See, e.g.*, Ex. 3, Representative Subpoena to Payne (ECF No. 8-1).

Respondents' paltry production also reveals that Respondents have been withholding communications between Respondents and a reporter (Thomas Rowley) to whom Payne sent false and derogatory allegations about Mkrtchyan intending for them to be published. Among the few communications Respondents produced with Rowley are references to other unproduced communications, including references to "screenshots" Payne had sent Rowley, as well as references to Payne's efforts to provide Rowley with "unnamed sources feeding [him] information." The undersigned raised all of these issues and others with Respondents in the October 12 letter referenced above. Ex. 1, Letter From R. Hartman (Oct. 12, 2025). But Respondents still have not corrected the deficiencies. Respondents' communications with Rowley are clearly responsive to the subpoenas, including Request No. 3 (all documents and

communications that "relate to any news articles, blog posts, online content, letters, investigation summaries, or reports regarding Petitioner") as well as Request No. 2 (all documents and communications that "refer to or relate to Petitioner"). *See, e.g.*, Ex. 3, Subpoena to Payne (ECF No. 8-1).

Respondents continue to obstruct subpoenas and ignore court orders, and thus must be held in contempt *until* they produce all records in their possession, custody, or control responsive to the subpoenas, including but not limited to the categories of unproduced records specifically discussed in this Motion: (1) all documents and communications related to the August 2024 letter Respondents had sent to the President of Uzbekistan; (2) all responsive documents and communications with Straife and Fleming, or among Payne, Somera, or other agents or representatives of Payne's companies; (3) responsive documents from other messaging platforms beyond Payne's email (*e.g.*, text messages, WhatsApp, Signal, Telegram); and (4) the full set of responsive documents and communications between Respondents and Rowley.

## II.   STATEMENT OF ISSUES TO BE RULED ON BY THE COURT

<u>Issue No. 1</u>: Whether Respondents should be held in contempt and ordered to compensate Mkrtchyan for his attorneys' fees.

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966); s*ee also Am. Airlines Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000) (civil contempt proceedings are appropriate to "coerce the defendant into compliance with the court's order" or "compensate the complainant for losses sustained"). The Court has "discretion to award attorneys' fees … in enforcement of its decrees." *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977).

**III.   ARGUMENT**

Respondents have twice been ordered to produce documents and twice warned of contempt, yet have failed to comply.

The Court's September 2 Order stated that: "If any Respondents do not comply with th[e] order, Petitioner shall advise the Court, which will convene a show cause hearing at which it may hold those Respondents in contempt, impose sanctions (including but not limited to payment of Petitioner's attorneys' fees and expenses incurred in bringing the Motion or otherwise enforcing the Subpoenas), or grant any appropriate relief to Petitioner." ECF No. 12 at 2.

On October 9, the Court denied Respondents' motion for in-camera inspection and again ordered Respondents to "fully" comply with its September 2 Order and produce all responsive documents, issuing a similar warning about contempt, reproduced in Section I above. The Court's Order stated that if Respondents do not comply with this Court's September 2 Order, the Court will convene a show cause hearing and determine any appropriate relief. ECF No. 23. As discussed above, Respondents clearly have not produced all responsive documents and are thus in violation of the Court's September 2 and October 9 Orders.

Pursuant to both orders, Mkrtchyan respectfully asks that the Court find Respondents in contempt, determine any appropriate compensatory award of attorneys' fees to Mkrtchyan for enforcing the Court's September 2 and October 9 Orders, and award any other relief as appropriate. *See Shillitani*, 384 U.S. at 370; *Am. Airlines Inc.*, 228 F.3d at 585; *Cook*, 559 F.2d at 272.

**IV.   CONCLUSION**

The Court should grant this Motion for Contempt and hold Respondents in contempt until they produce all documents responsive to the subpoenas. A proposed order is attached.

Dated:  December 11, 2025

Respectfully submitted,

/s/ *Ryan P. Hartman*
Ryan P. Hartman (Attorney-in-Charge)
Tex. Bar 24050727 / S.D. Tex. Bar 608056
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: (713) 576-2438
Email: Ryan.Hartman@arnoldporter.com

*Attorneys for Petitioner Ovik Mkrtchyan*

## CERTIFICATE OF CONFERENCE

As outlined in this Motion, I hereby certify that I attempted on many occasions to confer with counsel in good faith about this matter, but was unable to resolve it.

/s/ *Ryan P. Hartman*
Ryan P. Hartman

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2025, I filed this motion by ECF, which served a copy on all counsel of record for all respondents.

/s/ *Ryan P. Hartman*
Ryan P. Hartman