**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE APPLICATION OF OVIK MKRTCHYAN FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 4:25-mc-1122<br>Hon. Lee H. Rosenthal |
| OVIK MKRTCHYAN, Petitioner<br><br>v.<br><br>STEPHEN P. PAYNE, SR., LINDEN STRATEGIES, LLC, LINDEN ENERGY, LLC, LINDEN ENERGY HOLDINGS, INC. & AMERICAN LNG SERVICES, LLC, Respondents. | |

**PETITIONER OVIK MKRTCHYAN'S**
**REPORT REGARDING RESPONDENTS' CONTEMPT, AND**
**MOTION FOR CONTEMPT AWARD AND TO COMPEL PRODUCTION**

Ryan P. Hartman (Attorney-in-Charge)
Tex. Bar No. 24050727 / S.D. Tex. Bar 608056
**ARNOLD & PORTER KAYE SCHOLER LLP**
811 Main Street, Suite 1800
Houston, Texas 77002
Telephone: (713) 576-2438
Ryan.Hartman@arnoldporter.com

*Counsel for Petitioner Ovik Mkrtchyan*

# TABLE OF CONTENTS


SUMMARY OF ARGUMENT ........ 1

NATURE AND STAGE OF PROCEEDINGS ........ 2

1. Petitioner Seeks Discovery About an Ongoing Campaign Against Him ........ 2
2. Respondents Fail to Comply with Petitioner's Subpoenas or Serve Objections ........ 4
3. The September 2, 2025 Order (ECF 12): The Court Orders Respondents to Produce Responsive Documents After They Fail to Comply with the Subpoenas ........ 4
4. The October 9, 2025 Order (ECF 23): The Court Orders Respondents to Produce Responsive Documents After They Fail to Comply with the September 2 Order ........ 4
5. The January 9, 2026 Contempt Order (ECF 35): The Court Holds Respondents in Contempt After They Fail to Comply with Both Orders ........ 5
6. The February 17, 2026 Examination Order (ECF 45): The Court Orders a Forensic Examination of Payne's Phone ........ 6

SUMMARY OF THE FORENSIC EXAMINATION ........ 6

1. Data Was Deleted From Payne's Phone After He Received the Subpoenas and the Court's February 17, 2026 Examination Order ........ 6
2. Respondents Still Have Not Served a Privilege Log ........ 8
3. The Examiner Located at Least 20 Responsive, Undisclosed WhatsApp Messages ........ 9

STATEMENT OF ISSUES TO BE RULED ON BY THE COURT ........ 9

1. Issue No. 1: When Did Respondents Purge their Contempt? ........ 9
2. Issue No. 2: What Contempt Fines and Compensatory Relief Are Appropriate? ........ 10
3. Issue No. 3: Did Respondents Waive Privilege Over the Data on Payne's Phone by Failing to Serve a Complete Privilege Log? ........ 10

ARGUMENT ........ 11

1. Respondents Did Not Purge Their Contempt Until March 6, 2026 ........ 11
2. The Court Should Impose the Contempt Fines and/or Order Payne to Reimburse the Costs of the Examination, and Enter an Order on its Prior Attorneys' Fees Award ........ 18
3. The Court Should Find Respondents Waived Privilege Over the Data on Payne's Phone, and Compel Its Production ........ 20

CONCLUSION ........ 25

**TABLE OF AUTHORITIES**


**Cases** **Page(s)**

*American Airlines, Inc. v. Allied Pilots Ass'n*,
228 F.3d 574 (5th Cir. 2000) .......... 9-10, 19

*Calsep A/S v. Dabral*,
84 F.4th 304 (5th Cir. 2023) .......... 22

*Cook v. Ochsner Foundation Hospital*,
559 F.2d 270 (5th Cir. 1977) .......... 10

*EEOC v. BDO USA, L.L.P.*,
876 F.3d 690 (5th Cir. 2017) .......... 10, 21

*Haddonfield Foods, Inc. v. Southern Hens, Inc.*,
2023 WL 2449632 (S.D. Miss. Jan. 5, 2023) .......... 24

*In re Texas Automobile Dealers Ass'n*,
2003 WL 21911333 (5th Cir. July 25, 2003) .......... 23

*Motion Industries, Inc. v. Superior Derrick Services, LLC*,
2016 WL 760776 (E.D. La. Feb. 26, 2016) .......... 24

*Nance v. Thompson Medical Co.*,
173 F.R.D. 178 (E.D. Tex. 1997) .......... 24

*Norman Bridge Drug Co. v. Banner*,
529 F.2d 822 (5th Cir. 1976) .......... 10, 19

*Robinson v. Texas Automobile Dealers Ass'n*,
214 F.R.D. 432 (E.D. Tex. 2003) .......... 23-24

*Rogge v. Bandera Falls Property Owner's Ass'n*,
2009 WL 10713559 (W.D. Tex. Aug. 11, 2009) .......... 10

*Shillitani v. United States*,
384 U.S. 364 (1966) .......... 9

*United States v. United Mine Workers of America*,
330 U.S. 258 (1947) .......... 9

*United States v. Zolin*,
491 U.S. 554 (1989) .......... 25

**Statutes**

28 U.S.C. § 1782 .......... 2, 4

**Rules**

Fed. R. Civ. P. 45(d)(2)(B) .......... 4, 20

Fed. R. Civ. P. 45(e)(2)(A)(ii) .......... 20

Petitioner submits this report under the Court's February 17, 2026 order (the "Examination Order") (ECF 45), which requires that Petitioner "submit a filing to this Court addressing: whether the Examiner located additional materials responsive to the subpoenas that were not previously produced by Respondents, whether Respondents have purged their contempt, and if so, when." ECF 45 at 3. Petitioner further moves the Court for an order (i) determining the date on which Respondents purged their contempt, (ii) setting the related contempt fines and ordering reimbursement of Petitioner's attorneys' fees and forensic examination expenses, and (iii) compelling Payne to produce certain documents identified in the examination over which he claims privilege, but for which he has failed to supply a privilege log.

**SUMMARY OF ARGUMENT**

The forensic examiner located additional materials that Respondents should have produced in response to Petitioner's subpoenas and the Court's orders. Contrary to Respondents' January 12, 2026 affidavits claiming that they had no more responsive documents (ECF 36), the examiner located at least 20 unproduced WhatsApp messages responsive to the subpoenas and the Court's January 9, 2026 order granting Petitioner's motion for contempt (the "Contempt Order"). Respondents thus did not purge their contempt until, at the earliest, March 6, 2026, when the examiner collected those messages from Respondents.

The Court should impose the resulting fine under its Contempt Order and/or award Petitioner the $40,000 cost of the forensic examination required to obtain these documents. Moreover, the Court's Contempt Order awarded Petitioner his attorneys' fees and asked Petitioner to submit proof of the amount. Petitioner did so and the Court should award $8,563 in fees.

Additionally, Respondents still have not served a privilege log for the messages on Payne's phone. Months before the forensic review, Respondents served an incomplete privilege log on

October 2, 2025, that did not include any of those messages. Moreover, the Court ordered Respondents to serve a log for any data from the forensic review over which they assert privilege within 14 days of the examiner's delivery of the data to Respondents—i.e., by June 5, 2026. ECF 45 at 3. Respondents still have not done so or otherwise substantiated their privilege claims.

Thus, Petitioner respectfully asks that the Court (i) find that Respondents did not purge their contempt until March 6, 2026; (ii) order Payne to pay the $450,000 contempt fine to the Court and/or reimburse Petitioner for the $40,000 cost of the forensic examination, and award $8,563 in attorneys' fees; and (iii) either find that Respondents waived privilege over the responsive documents on Payne's phone and order their production or, alternatively, require Respondents to submit the documents for *in camera* review and provide a detailed privilege log substantiating each privilege claim, including evidence of an attorney-client relationship with Stoyan Baumeyer and Brian Ettinger that covers each document.

## NATURE AND STAGE OF PROCEEDINGS

### 1. Petitioner Seeks Discovery About an Ongoing Campaign Against Him

On June 16, 2025, Petitioner filed his Application to take discovery under 28 U.S.C. § 1782. ECF 1. The Application sought discovery for use in pending and contemplated foreign proceedings related to an ongoing campaign against Petitioner.

Specifically, Petitioner brought two proceedings in England over libelous articles: one against the owners of the *London Post*, an online hosting platform that, despite its name, is a Russian disinformation site, and another against public-relations consultant Radha Stirling, who operates several websites and has worked for Uzbek cement magnate Ulugbek Shadmanov.[1] The *London Post* and Stirling published libelous content about Petitioner and his business associates—

[1] The complaint against Stirling has now been refiled in Australia, where she claims to reside currently. The complaint against the *London Post*'s owners remains pending in England.

including false accusations of criminal conduct—as part of a broader campaign to harm Petitioner. The campaign began after Petitioner refused Shadmanov's request to use his U.S. connections to place individuals on the U.S. sanctions list. It proceeded in two phases:

**Unlawful detention (January 2024 to April 2024)**: First, the campaign arranged for Petitioner's unlawful detention in Uzbekistan in early 2024. Officials confined Petitioner to a tiny cell and tried to coerce fabricated confessions and money from him. He was released nearly three months later and was never convicted of any crime.

**Disinformation (April 2024 to present)**: Second, shortly after Petitioner was released from detention in April 2024, Shadmanov's group launched a disinformation campaign aimed at harming him and engineering his rearrest. Respondents were participants in that campaign—along with the defendants in the foreign proceedings and others—and thus possess information about its efforts. Specifically:

- In August 2024, Payne sent a false and disparaging letter to Uzbekistan's President and its Ambassador in Washington, D.C., accusing Petitioner of criminal conduct. ECF 2 at 11; ECF 4 ¶ 42. Notably, in a recent Houston arbitration against Payne, in which one of Petitioner's companies prevailed on all claims, the tribunal found that "Payne … betrayed Mkrtchyan by sending [this] disparaging letter … falsely accusing Mkrtchyan of serious misdeeds and criminal activity," and that "[t]he justifications Payne offered to explain the … letter do not withstand scrutiny." Ex. 9, Arbitration Award ¶¶ 185-86.[2]

- Payne's allegations closely tracked those contained in a letter and report that Joe Fleming and his company Straife, LLC—then working for Shadmanov—had secretly transmitted just one week earlier to Uzbekistan's President and Ambassador through a U.S. law firm. *See* ECF 4 ¶ 43. That firm has since retracted the allegations and apologized to both the President and Petitioner. Ex. 13.

- The allegations in both documents also closely track the allegations published beginning several weeks later by the *London Post* and Stirling that are the subject of Petitioner's foreign libel proceedings. ECF 4 ¶ 43.

[2] The tribunal also found that Payne's "written witness statements contained numerous falsehoods on material points," and that Payne's associate Logan Somera "also admitted to several false and misleading assertions in his written witness statements." Ex. 9 at 10 n. 1.

Petitioner therefore sought discovery under Section 1782 from Respondents regarding their participation in the campaign for use in the foreign proceedings.

### 2. Respondents Fail to Comply with Petitioner's Subpoenas or Serve Objections

On June 18, 2025, the Court granted Petitioner's Section 1782 Application. ECF 7. On June 19, Petitioner served Respondents with document subpoenas. ECF 8-2. Respondents did not produce documents by the subpoenas' July 21 compliance deadline; nor did they serve objections (or a privilege log) within fourteen days of service (July 3). Fed. R. Civ. P. 45(d)(2)(B). After inquiries from Petitioner's counsel, Payne belatedly produced a one-page document on July 22. ECF 8 at 1. The other Respondents ignored the subpoenas entirely. *Id.*

### 3. The September 2, 2025 Order (ECF 12): The Court Orders Respondents to Produce Responsive Documents After They Fail to Comply with the Subpoenas

After Respondents failed to comply with the subpoenas, the Court granted Petitioner's motion to compel and set a September 23, 2025 deadline for Respondents to produce "all documents and information responsive to the Subpoenas." ECF 12 at 2.

### 4. The October 9, 2025 Order (ECF 23): The Court Orders Respondents to Produce Responsive Documents After They Fail to Comply with the September 2 Order

Respondents produced 175 pages of documents but never informed Petitioner whether the production was complete and did not serve a privilege log. ECF 26 at 3. Instead, on September 24, one day after production was due, Respondents filed a motion for *in camera* review of withheld documents (ECF 16 at 2), and on October 2, they served an untimely and incomplete privilege log (ECF 20-3). On October 9, the Court denied Respondents' motion for *in camera* review and set an October 12 deadline for Respondents to "comply fully" with the September 2 Order "by producing all documents and information responsive to the subpoenas." ECF 23 at 1-2. The Court warned that noncompliance would trigger a show-cause contempt hearing. *Id.* at 2.

5. **The January 9, 2026 Contempt Order (ECF 35): The Court Holds Respondents in Contempt After They Fail to Comply with Both Orders**

Respondents did not comply. On October 28, 2025 (more than two weeks after the order's deadline), Respondents finally produced certain documents but continued to withhold others. ECF 26 at 4. On December 11, Petitioner filed a motion for contempt. ECF 26.

On January 9, 2026, the Court found Respondents in conditional contempt for failing to comply with its September 2, 2025 and October 9, 2025 orders. The Contempt Order allowed Respondents to purge the contempt by "producing all paper and electronic documents in their possession, custody, or control responsive to the subpoenas" by January 12, 2026 at 5:00 p.m. ECF 35 at 2-3. The Court specifically required Respondents to produce the following categories of responsive documents that Petitioner contended Respondents were withholding:

a. all **documents and communications related to [Payne's] August 2024 letter** titled "AMENDMENT TO PREVIOUS LETTER" referenced in Petitioner's Memorandum (ECF 2 at 8);

b. all responsive **documents and communications with Straife LLC or Joe Fleming**, including but not limited to responsive messages between Respondents or their officers, directors, agents, employees, or representatives, on one hand, and Straife LLC or Joe Fleming, on the other hand;

c. all responsive **communications between Respondent Payne and Logan Somera**, or among any other officers, directors, agents, employees, or representatives of any or all of the Respondents;

d. all responsive **documents and communications from other messaging platforms** beyond Payne's email such as **WhatsApp**, Signal, Telegram, and text messages; and

e. all responsive **documents and communications between Respondents and Thomas Rowley**.

*Id.* (emphasis added). If Respondents failed to comply, the Court would impose a fine on Payne of $5,000 per day that would increase to $10,000 per day and continue until the contempt was purged. *Id.* at 3. The order also awarded Petitioner his fees and costs for bringing the motion. *Id.*

After the Court issued its order, Respondents filed a "response" to Petitioner's contempt motion and attached supporting affidavits from Payne, Payne's associate Logan Somera, and Respondents' counsel, each dated January 12, 2026. ECF 36, 36-1, 36-2, 36-3. Payne and Somera stated that Respondents did not have documents responsive to the Contempt Order's five document categories. ECF 36-1 at 1; 36-2 at 1.

**6. The February 17, 2026 Examination Order (ECF 45): The Court Orders a Forensic Examination of Payne's Phone**

Respondents' affidavits revealed their failure to run key search terms, apparent spoliation, and assertions that no responsive documents existed despite Payne's contrary arbitration testimony. *See* ECF 38 at 1-2. Petitioner therefore moved to compel forensic examination of any phones Payne used from September 1, 2023, forward. *Id.* at 10-12. The Court set a February 17 hearing and ordered Payne to testify, but Respondents agreed to the examination shortly beforehand. ECF 40, 44. On February 17, the Court entered the agreed Examination Order requiring that Respondents deliver Payne's devices to an examiner, who would image and review them and deliver potentially responsive data to Respondents for privilege review. ECF 45 at 2-3. Respondents then had 14 days to serve a privilege log, after which they and the examiner were to "promptly release" all unlogged data and findings to Petitioner. *Id.* at 3.

## SUMMARY OF THE FORENSIC EXAMINATION

**1. Data Was Deleted From Payne's Phone After He Received the Subpoenas and the Court's February 17, 2026 Examination Order**

A forensic examination was conducted by FTI Consulting ("FTI"). Although the forensic examination could identify some deletion activity, it could not consistently recover content once deleted. The available evidence nevertheless shows that data was deleted from Payne's phone

before he surrendered it to the examiner—including after service of the June 2025 subpoenas and after entry of the Court's Examination Order.

First, as explained in Petitioner's contempt briefing, Payne testified in a December 2025 arbitration that he had continued to use a 90-day auto-delete function for text messages on his phone and had manually deleted messages, even after first anticipating litigation in September 2024. *See* ECF 38 at 7-9. The forensic examiner's May 4, 2026 report (the "FTI Report") confirmed that Payne continued to employ automated deletion on his WhatsApp messages through the examination (e.g., setting messages with Logan Somera to delete after 90 days). Ex. 1 at 8.

Second, the Report explains that on February 25, 2026, approximately a week *after* the Court issued the February 17 Examination Order requiring delivery of Payne's phone, someone downloaded three "cleanup applications"—CCleaner, AVG Cleaner, and SD Maid SE—before deleting them and other content a few days later. *Id.* at 4-6. In particular, FTI analyzed deletion events on the phone from February 22, 2026 to March 1, 2026 (slightly before and after the application installations) and found the following deletions:

- five application usage log entries across WhatsApp, Chrome, and Zengo (a cryptocurrency app);
- two call log entries from WhatsApp;
- eight web browsing cookies;
- four applications, including CCleaner, SD Maid, and AVG Cleaner, and a cryptocurrency wallet;
- ten instant messages across Facebook and Facebook Messenger.

*Id.* at 5-6. Official product materials state that CCleaner "can delete application cache, browser history, clipboard content, old call logs and more";[3] that AVG Cleaner "monitors and cleans" a

[3] *CCleaner for Android*, CCleaner, https://www.ccleaner.com/ccleaner-android (last visited July 22, 2026), Ex. 3.

phone's "browsing history, call history, and text messages";[4] and that SD Maid SE's "core purpose is freeing up space and removing unwanted data."[5]

**2. Respondents Still Have Not Served a Privilege Log**

On March 6 and April 8, 2026, FTI forensically collected data from Payne's mobile phone and later reviewed it for potential responsiveness using 31 agreed search terms.[6] Ex. 1, FTI Report at 1-2, 6. On April 24, FTI delivered this data to Respondents so that they could review it for privilege before its release to Petitioner. Ex. 6, Email at 2. Respondents did not serve a privilege log by the May 8 deadline (i.e., 14 days after FTI delivered the data (ECF 45 at 3)), and the data was not produced to Petitioner at that time. *See* Ex. 6. Instead, Respondents' counsel sent a one-page letter which generally asserted "privilege as to any communications between Stephen Payne and Stoyan Beaumeyer [sic]." Ex. 7, May 8, 2026 Letter.

Then on May 15, *three weeks after* FTI's delivery of potentially responsive data, Respondents stated for the first time that they opposed production of *any* documents, on the ground that an unspecified number of text messages identified in the review were not responsive. Ex. 8, Email at 41. Although the Examination Order granted FTI "discretion" to determine what is "potentially responsive" (ECF 45 at 2-3), Petitioner agreed to Respondents' request that FTI conduct a second review using more restrictive criteria. Ex. 8, Email at 38.

On May 22, FTI completed this review and delivered a smaller set of "approximately 1,074" text messages to Respondents for privilege review, requesting that they provide their

[4] *AVG Cleaner for Android*, AVG, https://www.avg.com/en-us/avg-memory-cleaner (last visited July 22, 2026), Ex. 4.

[5] *SD Maid 2/SE*, SD Maid 2/SE, https://sdmse.darken.eu/ (last visited July 22, 2026), Ex. 5.

[6] During FTI's initial collection on March 6, FTI could not collect data from Payne's Threema and Signal messaging applications. Ex. 1, FTI Report, at 2. Payne stated that he could not recall his Threema login credentials. *Id.* Payne then falsely "asserted that Signal fell outside of the scope of the subpoena and left with the device." *Id.* On April 8, FTI conducted a successful manual collection of data from the Signal application. *Id.* However, FTI could not access Threema without the password.

privilege log by May 27. *Id.* at 28. However, rather than provide a log allowing Petitioner to assess the privilege claim, Respondents emailed the undersigned and FTI to generally assert privilege over "all communications between Steve [Payne] and Stoyan [Baumeyer]" and "all messages with Brian Ettinger." *Id.* at 16, 41. Respondents' correspondence did not identify or describe the messages over which they asserted privilege, supply the basis for the privilege, or provide dates or a complete list of parties to those messages. *Id.*[7] On May 28, FTI provided Petitioner with a production of all messages except those over which Respondents had asserted privilege.

To date, Respondents still have not served Petitioner with a privilege log describing the data from Payne's phone that they are withholding, despite the Examination Order requiring a log within 14 days of FTI's data delivery (ECF 45 at 3) and the undersigned's further requests for one on at least four occasions. Ex. 8, Email at 2, 11, 17, 47.

### 3. The Examiner Located at Least 20 Responsive, Undisclosed WhatsApp Messages

Finally, as explained in more detail below, the examiner located at least 20 previously unproduced WhatsApp messages that were responsive to the subpoenas and the Contempt Order.

## STATEMENT OF ISSUES TO BE RULED ON BY THE COURT

### 1. Issue No. 1: When Did Respondents Purge their Contempt?

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966) (citations omitted); *see also Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000) (contempt sanctions are appropriate to "coerce the defendant into compliance with the court's order" or "compensate the complainant for losses sustained") (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)). A district court's decisions in a

[7] Payne also asserted privilege over messages with his spouse. *Id.* at 41. Based on his representation that they are irrelevant, Petitioner does not at this time seek their production or *in camera* review.

contempt proceeding are generally reviewed for abuse of discretion. *Id.* at 578 (citations omitted). Factual findings—including about whether a litigant has purged contempt—will be upheld unless clearly erroneous. *Id.* at 582.

**2. <u>Issue No. 2</u>: What Contempt Fines and Compensatory Relief Are Appropriate?**

Compensatory civil contempt reimburses the injured litigant for losses and expenses caused by the contemnor's noncompliance, including expenses "reasonably and necessarily incurred in the attempt to enforce compliance." *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir. 1976). The Court has broad discretion to award such relief based on the losses caused by the contemptuous conduct. *Am. Airlines, Inc.*, 228 F.3d at 585-86; *see also Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977).

**3. <u>Issue No. 3</u>: Did Respondents Waive Privilege Over the Data on Payne's Phone by Failing to Serve a Complete Privilege Log?**

Failure to serve a timely or complete privilege log may result in waiver, "where a court finds that the failure results from unjustified delay, inexcusable conduct, or bad faith." *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) (citation omitted); *see also Rogge v. Bandera Falls Prop. Owner's Ass'n*, 2009 WL 10713559, at *3 (W.D. Tex. Aug. 11, 2009) (holding that "[f]ailure to provide a privilege log" supporting generalized privilege objections waives privilege) (citation omitted).

District courts have "broad and considerable discretion" in determining whether a litigant has waived privilege, and that factual determination is reviewed for abuse of discretion. *BDO USA, L.L.P.*, 876 F.3d at 696-97 (citations omitted). Whether a district court used the correct legal standard in that determination is reviewed *de novo*. *Id.* at 697-98 (citations omitted).

## ARGUMENT

### 1. Respondents Did Not Purge Their Contempt Until March 6, 2026

Contrary to Respondents' sworn affidavits (*see* ECF 36-1, 36-2), the forensic examination revealed that for nearly a year, Respondents had been withholding responsive WhatsApp messages. Those messages evidence Respondents' involvement in the conspiracy and include information falling under the five document categories in the Court's Contempt Order:

- At least ten unproduced WhatsApp messages revealing that Payne disseminated and discussed one of the defamatory articles at issue in Petitioner's foreign proceedings;
- At least five unproduced WhatsApp messages revealing Respondents' apparent efforts to monitor Petitioner and his associates' activities during the time period of the campaign; and
- At least five unproduced WhatsApp messages corroborating Respondents' connection with the campaign's ringleader, Shadmanov, during the time period of the campaign.

Respondents thus did not purge their contempt until at least March 6, 2026, when the examiner collected the unproduced WhatsApp messages from Payne's phone.

#### A. Respondents Withheld WhatsApp Messages in which Payne Shares Stirling's Defamatory Article and Discusses His "Smear Campaign"

FTI identified at least ten previously unproduced WhatsApp messages in which Payne shared and discussed a defamatory article that is the subject of Petitioner's foreign libel lawsuit. Specifically, the WhatsApp messages show that Payne shared an article by Stirling, the defendant in one of the foregoing lawsuits, shortly after the article was published on Stirling's "Detained in Dubai" website in January 2025. Payne shared a link to the article with at least nine people (including his associate Somera). The relevant messages are reproduced in the table below:[8]

[8] The unproduced messages in this table can be found in Exhibit 2, which collects the relevant excerpts from FTI's productions and is authenticated by the accompanying declaration.

| # | From | To | Body | Timestamp - Time |
|---|---|---|---|---|
| 68 | 18324736700@ s.whatsapp.net **Steve Payne** | 18325716091@s.whatsapp.net **Logan [Somera]** - 359889222258@s.whatsapp.net **Dessi Popov** - | **https://www.detainedindubai.org/ post/us-lobbyists-used-in-plot-to-destabilise-us-relations-with-uzbekistan-and-steal-central-asia-s-large** | 1/24/2025 9:23:16 AM(UTC-6) |
| 69 | 18324736700@ s.whatsapp.net **Steve Payne** | 12166504959@s.whatsapp.net **Nate Sero** - | **https://www.detainedindubai.org/ post/us-lobbyists-used-in-plot-to-destabilise-us-relations-with-uzbekistan-and-steal-central-asia-s-large** | 1/25/2025 8:10:22 PM(UTC-6) |
| 71 | 18324736700@ s.whatsapp.net **Steve Payne** | 15126945724@s.whatsapp.net **Todd Gallaher** - | **https://www.detainedindubai.org/ post/us-lobbyists-used-in-plot-to-destabilise-us-relations-with-uzbekistan-and-steal-central-asia-s-large** | 1/27/2025 3:19:30 PM(UTC-6) |
| 76 | 18324736700@ s.whatsapp.net **Steve Payne** | 13107707351@s.whatsapp.net **Geoff Nordloh** - 447880731030@s.whatsapp.net **Mike Conroy** - 18325716091@s.whatsapp.net **Logan [Somera]** - | **https://www.detainedindubai.org/ post/us-lobbyists-used-in-plot-to-destabilise-us-relations-with-uzbekistan-and-steal-central-asia-s-large** | 2/11/2025 7:35:22 AM(UTC-6) |
| 77 | 18324736700@ s.whatsapp.net **Steve Payne** | 12815131786@s.whatsapp.net **Tanweer Ahmed** - 18325716091@s.whatsapp.net **Logan [Somera]** - | **https://www.detainedindubai.org/ post/us-lobbyists-used-in-plot-to-destabilise-us-relations-with-uzbekistan-and-steal-central-asia-s-large** | 2/13/2025 3:53:44 PM(UTC-6) |
| 78 | 18324736700@ s.whatsapp.net **Steve Payne** | 18328123100@s.whatsapp.net **Monica** - | **https://www.detainedindubai.org/ post/us-lobbyists-used-in-plot-to-destabilise-us-relations-with-uzbekistan-and-steal-central-asia-s-large** | 2/21/2025 8:18:43 PM(UTC-6) |
| 103 | 18324736700@ s.whatsapp.net **Steve Payne** | 12817254955@s.whatsapp.net **Charlie Sero** - | **https://www.detainedindubai.org/ post/us-lobbyists-used-in-plot-to-destabilise-us-relations-with-uzbekistan-and-steal-central-asia-s-large** | 1/24/2025 9:23:43 AM(UTC-6) |

| # | From | To | Body | Timestamp - Time |
|---|---|---|---|---|
| 104 | 18324736700@s.whatsapp.net **Steve Payne** | 12817254955@s.whatsapp.net **Charlie Sero** - | **https://www.detainedindubai.org/post/us-lobbyists-used-in-plot-to-destabilise-us-relations-with-uzbekistan-and-steal-central-asia-s-large** | 5/6/2025 6:39:29 PM(UTC-5) |
| 105 | +18324736700 **Steve Payne** | **+15126945724** | **https://www.detainedindubai.org/post/us-lobbyists-used-in-plot-to-destabilise-us-relations-with-uzbekistan-and-steal-central-asia-s-large** | 1/27/2025 1:57:18 PM(UTC-6) |

In one of these exchanges dated January 24, 2025, a person to whom Payne sent a link to the Stirling article responds, referring to Payne's involvement in "funding a smear campaign":

| # | Participants | Body | Timestamp - Time |
|---|---|---|---|
| 11552 | 18324736700@s.whatsapp.net **Steve Payne** 12817254955@s.whatsapp.net **Charlie Sero** | [Sero]: So they're mad at you for funding a **smear campaign**? | 1/24/2025 11:30:06 AM(UTC-6) |

Several months later in May 2025, Payne sent the article to the same person, while referring to it as part of a "deal" that has been going on for a "year" (i.e., the 2024 time period in which Mkrtchyan alleges that the misinformation part of the campaign started) and that "[w]e're halfway through right now":

| # | Participants | Body | Timestamp - Time |
|---|---|---|---|
| 11679-11684 | 18324736700@s.whatsapp.net **Steve Payne** (owner)<br><br>12817254955@s.whatsapp.net **Charlie Sero** | [Payne]: https://www.detainedindubai.org/post/us-lobbyists-used-in-plot-to-destabilise-us-relations-with-uzbekistan-and-steal-central-asia-s-large<br><br>[Payne]: I guess this happened when you were at SMU<br><br>[Sero]: Yeah you were telling me about that deal<br><br>[Sero]: So it ended up working out?<br><br>[Payne]: Yeah for a year<br><br>[Payne]: We're halfway through right now | 5/6/2025 6:39:29 PM (UTC-5)<br><br>through<br><br>5/6/2025 7:00:45 PM (UTC-5) |

These unproduced messages further confirm Payne's involvement in the campaign and show Payne disseminating one of the very articles at issue in the foreign litigation. Significantly, they even show that Payne disseminated this defamatory article on the same day (January 27, 2025) that he was encouraging U.K.-based journalist Thomas Rowley to publish similar false allegations. Ex. 2, row 70.

The unproduced WhatsApp messages are responsive to several requests in Petitioner's subpoenas (ECF 8-1):

- **Request 1**: All Documents and Communications exchanged with, or **relating to** . . . **Radha Stirling,** IPEX (Interpol and Extradition) Reform, **Detained in Dubai,** Due Process International, or any officers, directors, employees, or agents of those organizations or individuals;

- **Request 2**: All Documents and Communications that **refer to or relate to Petitioner**;

- **Request 3**: All Documents and Communications that relate to any **news articles, blog posts, online content, letters, investigation summaries, or reports** regarding Petitioner.

*Id.* at 7-8 (emphasis added). The messages also fall squarely under at least two of the document categories in the Court's January 9 Contempt Order:

- **Document category (c)**: all responsive communications between Respondent Payne and **Logan Somera**, or among any other officers, directors, agents, employees, or representatives of any or all of the Respondents.

- **Document category (d)**: all responsive documents and communications from other messaging platforms beyond Payne's email such as **WhatsApp**, Signal, Telegram, and text messages.

ECF 35 at 2-3 (emphasis added).

These unproduced messages contradict Respondents' statements in their January 12 affidavits. For example, Payne stated in his affidavit:

- [in response to document **category (c)**]: I, Stephen Payne, have no such responsive communications with **Logan Somera** nor any other officers, directors, agents, employees, or representatives of any or all of the Respondents; and

- [in response to document **category (d)**]: There are no such responsive documents or communications from other message platforms beyond Payne's emails such as **WhatsApp,** Signal, Telegram, and text messages.

ECF 36-1 at 1 (emphasis added). These representations were false.[9]

### B. Respondents Withheld Other Responsive WhatsApp Messages about Petitioner

FTI's data production included other responsive but unproduced WhatsApp messages about Petitioner. For example, weeks after Payne sent his false August 23, 2024, letter to Uzbekistan's President and Ambassador in Washington about Petitioner and his associate Uktam Aripov, he told Somera and another person that "[t]he Uzbek government is starting to come after uktam" (Ex. 2):

| # | From | To | Body | Timestamp - Time |
|---|---|---|---|---|
| 51 | 18324736700@ s.whatsapp.net **Steve Payne** | 37129208851@s.whatsapp.net **Edgars Jansons** - 18325716091@s.whatsapp.net **Logan [Somera]** - | **The Uzbek government is starting to come after uktam** | 10/16/2024 8:01:19 AM(UTC-5) |

Other unproduced messages reveal that Respondents at times monitored and discussed information about Petitioner and Aripov daily while working for Shadmanov (*id.*):

| # | From | To | Body (excerpts) | Timestamp - Time |
|---|---|---|---|---|
| 85 | 15128036390@ s.whatsapp.net **Ella Stovall** | Participants: 18325716091@s.whatsapp.net **Logan [Somera],** 15128036390@s.whatsapp.net **Ella Stovall,** 18324736700@s.whatsapp.net **Steve Payne** (owner) | *Monday 06/23*… **"uktam aripov" and "ovik Mkrtchyan" -** nothing posted within the last week/month | 6/23/2025 8:55:50 AM(UTC-5) |
| 86 | 15128036390@ s.whatsapp.net **Ella Stovall** | Participants: 18325716091@s.whatsapp.net **Logan [Somera],** 15128036390@s.whatsapp.net | *Tuesday 06/24*… **"uktam aripov" and "ovik Mkrtchyan" -** nothing | 6/24/2025 8:57:14 AM(UTC-5) |

[9] Logan Somera made nearly identical (and false) representations in his affidavit. ECF 36-2 at 1.

| # | From | To | Body (excerpts) | Timestamp - Time |
|---|---|---|---|---|
| | | **Ella Stovall**,<br>18324736700@s.whatsapp.net<br>**Steve Payne** (owner) | | |
| 87 | 15128036390@<br>s.whatsapp.net<br>**Ella Stovall** | Participants:<br>18325716091@s.whatsapp.net<br>**Logan [Somera]**,<br>15128036390@s.whatsapp.net<br>**Ella Stovall**,<br>18324736700@s.whatsapp.net<br>**Steve Payne** (owner) | *Wednesday 06/25*…<br>**"uktam aripov" and "ovik Mkrtchyan" -** nothing | 6/25/2025<br>8:52:32<br>AM(UTC-5) |
| 92 | 15128036390@<br>s.whatsapp.net<br>**Ella Stovall** | Participants:<br>18325716091@s.whatsapp.net<br>**Logan [Somera]**,<br>15128036390@s.whatsapp.net<br>**Ella Stovall**,<br>18324736700@s.whatsapp.net<br>**Steve Payne** (owner) | *Thursday 06/26*…<br>nothing on . . . **"uktam aripov" and "ovik Mkrtchyan"** | 6/26/2025<br>8:47:41<br>AM(UTC-5) |

These unproduced WhatsApp messages further corroborate Respondents' involvement in the campaign, including their continuing efforts to monitor the campaign's results in Uzbekistan and elsewhere during the period in which they worked with Shadmanov.

The messages are responsive to several requests in Petitioner's subpoenas:

- **Request 2**: All Documents and Communications that **refer to or relate to Petitioner**;

- **Request 3**: All Documents and Communications that relate to any **news articles, blog posts, online content, letters, investigation summaries, or reports** regarding Petitioner;

- **Request 5**: All Documents and Communications relating to **Petitioner's detention in Uzbekistan**, **plans to detain Petitioner and/or charge Petitioner with crimes**, or a desire to detain Petitioner and/or charge Petitioner with crimes.

ECF 8-1 at 7-8 (emphasis added). The messages also fall under categories (c) and (d) of the Contempt Order, and as explained above, they contradict Respondents' statements in their January 12 affidavits that they did not have responsive documents. ECF 36-1 at 1; 36-2 at 1.

### C. Respondents Withheld Responsive WhatsApp Messages about Shadmanov

FTI's May 28 data production includes at least five unproduced WhatsApp messages about the campaign's ringleader Shadmanov and his company United Cement Group (UCG). The messages show that at the same time (indeed, the same day and week) that Respondents were monitoring and discussing news about Petitioner, they were also monitoring information about Shadmanov, UCG, UCG's registered lobbyist (Mercury Public Affairs), the President of Uzbekistan (to whom Payne sent his false August 2024 letter), and the President's daughter (Ex. 2):

| # | From | To | Body (excerpts) | Timestamp - Time |
|---|---|---|---|---|
| 88 | 18325716091@s .whatsapp.net **Logan [Somera]** | **Participants:** 18325716091@s.whatsapp.net **Logan [Somera]**, 15128036390@s.whatsapp.net **Ella Stovall**, 18324736700@s.whatsapp.net **Steve Payne** (owner) | @15128036390<br><br>Look up FARA [Foreign Agents Registration Act] or LDA [Lobbying Disclosure Act] registrants for **United Cement Group or Ulugbek Shadmanov**. Should be called **Mercury** but may have others.<br><br>See if they have any filings on who they met with in USG | 6/25/2025 6:57:23 PM(UTC-5) |
| 89 | 18325716091@s .whatsapp.net **Logan [Somera]** | **Participants:** 18325716091@s.whatsapp.net **Logan [Somera]**, 15128036390@s.whatsapp.net **Ella Stovall**, 18324736700@s.whatsapp.net **Steve Payne** (owner) | Also put together something outlining the trade between Uzbekistan and the US, where they are in trade talks, … | 6/25/2025 7:49:44 PM(UTC-5) |
| 90 | 15128036390@s .whatsapp.net **Ella Stovall** | **Participants:** 18325716091@s.whatsapp.net **Logan [Somera]**, 15128036390@s.whatsapp.net **Ella Stovall**, 18324736700@s.whatsapp.net **Steve Payne** (owner) | There are no postings of **Mercury affiliation with UCG** but on open secrets, they posted three interactions and posted their lobbying reports. … | 6/25/2025 7:58:10 PM(UTC-5) |
| 91 | 15128036390@s .whatsapp.net **Ella Stovall** | **Participants:** 18325716091@s.whatsapp.net **Logan [Somera]**, 15128036390@s.whatsapp.net **Ella Stovall**, 18324736700@s.whatsapp.net **Steve Payne** (owner) | And there arnt [aren't] any current FARA records that exist for **Mercury Public Affairs** in connection with **United Cement Group or Shadmanov** | 6/25/2025 7:58:44 PM(UTC-5) |

| # | From | To | Body (excerpts) | Timestamp - Time |
|---|---|---|---|---|
| 93 | 18325716091@s<br>.whatsapp.net<br>**Logan [Somera]** | **Participants:**<br>18325716091@s.whatsapp.net<br>**Logan [Somera]**,<br>15128036390@s.whatsapp.net<br>**Ella Stovall**,<br>18324736700@s.whatsapp.net<br>**Steve Payne** (owner) | …We need to see a rundown of anything you can find on public officials (Saida Mirziyoyeva, Otobek _____, **Ulugbek Shadmanov,** President etc) that have said or have anything to do with TPS, Yangi, or Novo | 6/27/2025<br>7:48:06<br>AM(UTC-5) |

These unproduced messages about Shadmanov further corroborate Respondents' connections to the campaign's ringleader during the campaign and are responsive to at least two requests in Petitioner's subpoenas:

- **<u>Request 2</u>**: All Documents and Communications that **refer to or relate to Petitioner**;
- **<u>Request 4</u>**: All Documents and Communications exchanged with, or relating to: **Ulugbek Shadmanov; United Cement Group** or its affiliates or subsidiaries; or the officers, directors, agents, employees, attorneys, or representatives of the foregoing, including but not limited to Stephen Akard or his firm.

ECF 8-1 at 7-8 (emphasis added). They also fall under categories (c) and (d) in the Contempt Order (ECF 35 at 2-3), and contradict Respondents' representations in their January 12 affidavits that they did not possess responsive documents. ECF 36-1 at 1; 36-2 at 1.

* * *

For these reasons, Payne did not purge his contempt until at least March 6, 2026, when Payne provided his phone for forensic examination.

**2. The Court Should Impose the Contempt Fines and/or Order Payne to Reimburse the Costs of the Examination, and Enter an Order on its Prior Attorneys' Fees Award**

The Court's Contempt Order provided that if Respondents did not produce all responsive documents by January 12, 2026, the Court would fine Payne $5,000 per day beginning that day (i.e., the third day after the order was entered on January 9), increasing to $10,000 per day

beginning on the tenth day after the order was entered. ECF 35 at 3. Payne's fine payable to the Court for January 12, 2026 through March 6, 2026 is therefore at least $450,000.

As an alternative or in addition to this, Petitioner asks that the Court require Payne to reimburse Petitioner for over $40,000 in costs that Petitioner incurred with FTI for its forensic review. Decl. of Ryan Hartman ¶ 14. As noted above, compensatory civil contempt reimburses the injured litigant for losses and expenses caused by the contemnor's noncompliance, including expenses "reasonably and necessarily incurred in the attempt to enforce compliance." *Norman Bridge Drug Co.*, 529 F.2d at 827. The Court has broad discretion to award such relief based on the losses caused by the contemptuous conduct. *Am. Airlines, Inc.*, 228 F.3d at 585-86 (citations omitted). Here, the forensic examination at a cost of over $40,000 was made necessary by Payne's failure to produce responsive communications despite the subpoenas and repeated orders compelling production—and by his sworn representation that no such communications existed. The examination was the means required to secure Payne's compliance, and it uncovered at least twenty responsive WhatsApp messages that he had failed to produce. Because Petitioner would not have incurred those costs but for Payne's contempt, the Court should order Payne to pay them as compensatory relief.

Separately, the Contempt Order also required Respondents to pay, jointly and severally, any expenses, costs, and attorneys' fees incurred by Petitioner that shall be determined by the Court after Petitioner submits his itemized damages. ECF 35 at 3. Petitioner's counsel submitted a declaration attesting to $8,563 in attorneys' fees incurred through the January 9 hearing on that motion. ECF 41-1 ¶ 4. Petitioner respectfully asks the Court to enter an order on that amount.

### 3. The Court Should Find Respondents Waived Privilege Over the Data on Payne's Phone, and Compel Its Production

Respondents' continued failure to serve a privilege log for the data on Payne's phone more than justifies waiver of privilege. Respondents have ignored deadlines under the Rules and the Court's orders, and the undersigned's repeated requests for a log. In the alternative, if the Court declines to find waiver at this time, Petitioner requests that the Court order Payne to (a) produce for *in camera* review any data on Payne's phone withheld as privileged (other than messages with Payne's spouse), and (b) provide a privilege log and substantiation of the privilege so that Petitioner can assess the basis for it.

#### A. Respondents Did Not Serve A Privilege Log Addressing The Phone's Data When Their Log Was First Due More Than A Year Ago On July 3, 2025

A person withholding subpoenaed information based on privilege must serve a privilege log "describ[ing] the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A)(ii). Respondents' objections and privilege log were due July 3, 2025 (14 days after the subpoenas were served on June 19, 2025). ECF 8-2. *See* Fed. R. Civ. P. 45(d)(2)(B). But Respondents provided neither. Instead, they waited until October 2, 2025, to serve a log (ECF 20-3), a month after the Court's September 2 order (ECF 12) compelling production and three months after their objections were due. Respondents' October 2 log is the only privilege log they have served to date, but it does not address *any* data from Payne's phone.

#### B. Respondents Also Did Not Serve A Privilege Log Addressing The Phone's Data By The February 2026 Order's Applicable Deadlines: May 8 Or June 5, 2026

Moreover, the Court's February 17, 2026 order also required that "[w]ithin 14 calendar days of [FTI's] delivery [of the phone's data to Respondents], Respondents shall provide to the Examiner and Petitioner a privilege log for any Data over which Respondents assert privilege."

ECF 45 at 3. FTI's initial delivery of the phone's data to Respondents occurred on April 24, 2026, setting a May 8 deadline for Respondents to serve their log. FTI's second delivery following re-review of the data occurred on May 22, setting a June 5 deadline.[10] In either case, Respondents' log is now well overdue.

Rather than serve a log substantiating their privilege claims, Respondents instead made two broad privilege assertions in a letter and emails to the undersigned: first, Respondents asserted attorney-client privilege over "all communications between Steve [Payne] and Stoyan [Baumeyer]" (Ex. 7, May 8, 2026 Letter; Ex. 8, Email at 41) and, second, over "all messages with Brian Ettinger" (Ex. 8, Email at 16). Without an actual log identifying the individual messages (including dates, senders, and recipients) and substantiating the privilege, it is impossible for Petitioner to assess the privilege. Accordingly, the undersigned has repeatedly requested a log from Respondents on at least four occasions (Ex. 8, Email at 2, 11, 17, and 47).

### C. Respondents' Conduct Justifies Waiver

Respondents' efforts to frustrate these proceedings constitute the type of "unjustified delay, inexcusable conduct, or bad faith" that courts in the Fifth Circuit find warrants privilege waiver. *BDO USA*, 876 F.3d at 697 (citations omitted). Respondents have repeatedly dragged their feet in defiance of the Court's orders. As noted above, Respondents (i) did not serve objections or a privilege log by Rule 45's **July 3, 2025** deadline; (ii) did not produce any documents by the subpoenas' **July 21, 2025** deadline; (iii) did not produce "all documents and information responsive to the subpoenas" by the **September 23, 2025** deadline under the September 2 order, ECF 12 at 2; (iv) did not "produc[e] all documents and information responsive to the subpoenas"

---

[10] On June 1, 2026, FTI provided Respondents' counsel with copies of several files previously identified in its production and requested confirmation of any privilege claims. Respondents asserted privilege over one file. Ex. 8, Email at 7. Under the Examination Order, Respondents were required to log that file no later than June 15 (if not earlier on June 5), but failed to do so.

by the **October 12, 2025** deadline under the October 9 order, ECF 23 at 1; (v) did not produce all documents required by the Contempt Order; and (vi) did not serve a privilege log by the **May 8 or June 5, 2026** deadlines under the Examination Order, ECF 45 at 3. Whatever halting progress has been made toward Respondents' compliance has come only after repeated entreaties from the undersigned, the examiner, and the Court. And Payne's installation of deletion apps after the Court's Examination Order further belies any potential excuse for his habitual noncompliance.

Respondents have not provided any justification for their conduct. The only conclusion to be drawn from Respondents' unjustified delays and continued non-compliance is that Respondents are acting in bad faith. *See, e.g.*, *Calsep A/S v. Dabral*, 84 F.4th 304, 313 (5th Cir. 2023) (recognizing history of delay, deletion, and non-compliance as basis for bad faith).

Moreover, Respondents appear to be using their catch-all privilege assertions over "*all* communications" between Payne and Stoyan Baumeyer, or Payne and Brian Ettinger, as a way to conceal non-privileged information. Notably, in the recent arbitration between Payne and Petitioner's company, Payne called Baumeyer as a fact witness but at no point disclosed Baumeyer as his former or current attorney. Payne's sworn testimony instead described Baumeyer as a "local consultant" for his projects in Bulgaria and testified that his engagements with him had been limited to "[j]ust a couple of things with Bulgaria." Ex. 10, Arbitration Tr. Excerpts at 514-16. Nor did Baumeyer describe himself as Payne's former or current attorney: Baumeyer testified that he had introduced Payne to contacts in Bulgaria and received no compensation other than travel reimbursement. Ex. 11, Baumeyer's Arbitration Witness Statement at 4. Indeed, Baumeyer's testimony was that he had worked as *Petitioner's* attorney, not Payne's. *Id*.

Similarly, while Ettinger has acted as an attorney for Payne, they also have business dealings together. Ettinger and Payne formed a consulting company, Team Eagle Consulting LLC,

within a month of Payne sending his August 2024 letter, and this company also appears to be involved in the campaign against Petitioner.[11]

All of the foregoing suggests that Respondents' blanket attorney-client privilege claims over "*all*" communications between Payne and Baumeyer or Ettinger have been made in bad faith, especially to the extent that the arbitration concerned the subpoenas' responsive time period of "September 1, 2023, forward." ECF 8-1 at 6. However, because Respondents have still not served a privilege log, it is impossible for Petitioner to assess Respondents' claims.

Courts have found waiver on facts less egregious than those here. For example, in *Robinson v. Texas Automobile Dealers Association,* the court found that the defendants waived privilege over certain documents that they had failed to list in their original privilege log, adding them only after plaintiffs filed a motion to compel. 214 F.R.D. 432, 456 (E.D. Tex. 2003), *vacated in part on other grounds by In re Tex. Auto. Dealers Assn*., 2003 WL 21911333 (5th Cir. July 25, 2003). The court explained:

> While waiver based on such conduct may seem like a harsh penalty, such a policy is necessary to prevent gamesmanship. If a party is allowed to withhold documents without giving opposing parties notice that the documents exist but are being withheld, the opposing party will obviously be unable to contest the validity of a privilege or protection asserted for those documents. Amending the privilege log to fully disclose the scope of withheld documents after a motion to compel documents in the privilege log has already been filed is too late to serve that purpose.

*Id.* Respondents' misconduct here is even more glaring: not only did they fail to produce any log until October 2, over a month after Petitioner had filed *and the Court had ruled on his motion to compel* (only after the undersigned's repeated requests for one), Respondents *continue* to withhold a log identifying the allegedly privileged communications with Baumeyer and Ettinger.

---

[11] Team Eagle, *Team Eagle Signs Agreement with Pakistan for Strategic Political Advocacy and Economic Development Advisory*, PR Newswire (Oct. 23, 2024), https://www.prnewswire.com/news-releases/team-eagle-signs-agreement-with-pakistan-for-strategic-political-advocacy-and-economic-development-advisory-302284874.html, Ex. 12.

Likewise, in *Nance v. Thompson Medical Company*, the court found that the defendant had waived work-product protections over certain documents because, although the defendant had listed them in its log, it only asserted attorney-client privilege. 173 F.R.D. 178, 183 (E.D. Tex. 1997). The court explained that "[w]aiver of either the attorney-client privilege or the attorney work product privilege can also occur when a party fails to state a privilege objection in the 'privilege log' as required under Federal Rule of Civil Procedure 26(b)(5)." *Id.* at 182 (citations omitted). Here, Respondents failed to list the documents entirely. *See also Haddonfield Foods, Inc. v. S. Hens, Inc.*, 2023 WL 2449632, at *2 (S.D. Miss. Jan. 5, 2023) (finding defendant waived privilege over two audio recordings because it did not produce the recordings until after the court had sanctioned the defendant for withholding recordings and ordered production); *Motion Indus., Inc. v. Superior Derrick Services, LLC*, 2016 WL 760776, at *3 (E.D. La. Feb. 26, 2016) (finding plaintiff waived privilege because it failed to object to discovery requests until six weeks after the deadline and failed to serve a privilege log at that time).

**D. Alternatively, The Court Should Order Respondents to Produce the Allegedly Privileged Materials for *In Camera* Review and Produce a Privilege Log**

At minimum, the Court should order *in camera* review of the allegedly privileged communications. Courts faced with inadequate privilege logs may conduct *in camera* review of withheld documents. *See, e.g.*, *Robinson*, 214 F.R.D. at 438. "[T]he decision whether to engage in *in camera* review rests in the sound discretion of the district court. The court should make that decision in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review [and] the relative importance to the case of the alleged privileged information . . . ." *United States v. Zolin*, 491 U.S. 554, 572 (1989).

Here, as explained above, Respondents asserted catch-all claims of attorney-client privilege over "*all* communications" with Baumeyer and Ettinger. Ex. 8, Email at 16, 41; Ex. 7, May 8, 2026 Letter. However, sworn testimony by Payne and Baumeyer in the recent arbitration indicates Baumeyer was not acting as Payne's attorney during the responsive period (or perhaps ever), and Payne's relationship with Ettinger includes both legal and business matters. These circumstances justify ordering Respondents to produce the allegedly privileged materials for *in camera* inspection, and provide a log of the privileged communications and evidence of the privilege's applicability.

## CONCLUSION

Petitioner respectfully asks that the Court (i) order Payne to pay the $450,000 contempt fine to the Court, reimburse Petitioner $40,000 for the cost of the forensic examination, or both; (ii) award Petitioner $8,563 in attorneys' fees; (iii) either find that Respondents waived privilege over the responsive documents on Payne's phone and order their production, or alternatively, require Respondents to submit the documents for *in camera* review and provide a detailed privilege log substantiating each privilege claim and attorney-client relationship, and (iv) grant Petitioner any other appropriate relief. A proposed order is attached.

Dated: July 23, 2026

Respectfully submitted,

/s/ Ryan P. Hartman
Ryan P. Hartman (Attorney-in-Charge)
Tex. Bar No. 24050727 / S.D. Tex. Bar 608056
**ARNOLD & PORTER KAYE SCHOLER LLP**
811 Main Street, Suite 1800
Houston, Texas 77002
Telephone: (713) 576-2438
Ryan.Hartman@arnoldporter.com

*Counsel for Petitioner*

## CERTIFICATE OF CONFERENCE

I hereby certify that I attempted to resolve this matter without the necessity of filing a motion, but was unsuccessful for the reasons outlined herein.

/s/ Ryan P. Hartman
Ryan P. Hartman

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing to be filed through the CM/ECF system on July 23, 2026, which will notify all counsel of record.

/s/ Ryan P. Hartman
Ryan P. Hartman