# Exhibit 11

**CONFIDENTIAL UNDER ICDR RULES**

TO THE AMERICAN ARBITRATION ASSOCIATION, INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

IN THE MATTER OF

NRCO ENGINEERING S.A.,

Claimant,

v.

LINDEN ENERGY, LLC AND STEPHEN P. PAYNE, in his individual capacity,

Respondents.

**SUPPLEMENTAL WITNESS STATEMENT OF STOYAN BAUMEYER**

UNDER THE AMERICAN ARBITRATION ASSOCIATION'S INTERNATIONAL DISPUTE RESOLUTION PROCEDURES, THE FEDERAL ARBITRATION ACT, AND THE TEXAS ARBITRATION ACT

I, Stoyan Baumeyer, am over eighteen (18) years of age, of sound mind, and fully competent to make this supplemental witness statement. I reside at Grande-rue 38A, 1297 Founex, Switzerland.

I submit this supplemental statement in response to the witness statements of Mr. Ovik Mkrtchyan and Mr. Uktam Aripov, both dated November 24, 2025. I have reviewed those statements and their exhibits carefully. I provide this statement to clarify certain matters and address specific allegations raised in their testimony.

This supplemental statement is based on my personal knowledge and recollection unless otherwise indicated.

**I. Observations Regarding Mr. Aripov's Role**



Ib

Both Mr. Mkrtchyan and Mr. Aripov dispute my description of Mr. Aripov's role in the relationship between Mr. Mkrtchyan and Mr. Payne.

Mr. Aripov states that we met only twice, in 2015 and 2018. This is incorrect. We met at least three times: April 2016 in Geneva, July 2016 in Riga, and June 2018 in Washington, D.C.

While the number of in-person meetings was limited, my understanding of Mr. Aripov's role did not derive solely from those encounters.

Over many years, and across several matters unrelated to the LNG projects, I repeatedly observed that:

- Mr. Mkrtchyan involved or referred to Mr. Aripov in ways consistent with an intermediary, and

- Mr. Payne consistently described Mr. Aripov as the person through whom he communicated with Mr. Mkrtchyan.

This pattern persisted for nearly a decade.

From 2016 onward, Mr. Payne regularly told me that his communications and instructions from Mr. Mkrtchyan came through Mr. Aripov. Whether this authority was formal or informal, the practical reality was that Mr. Aripov acted as the communication channel between them.

Neither Mr. Mkrtchyan nor Mr. Aripov ever informed me that this understanding was incorrect. It is also possible that Mr. Aripov overstated or exceeded his authority, especially given that he was the only communication link at that time. Mr. Mkrtchyan's children became involved only from 2022 onward.

I understand that Mr. Aripov claims he worked for Mr. Payne and that he received a commission from Mr. Payne. This does not exclude the possibility that he also acted, in practice, as an intermediary for Mr. Mkrtchyan thereafter.

In my view, his actions ultimately advanced the interests of both Mr. Mkrtchyan and himself.

**II. My Professional History and the Swiss Criminal Proceedings**

Mr. Mkrtchyan's witness statement references a Swiss criminal conviction and suggests that it affects my credibility. I therefore provide full context.

In 2021, I was convicted in Switzerland for my conduct as an arbitrator in an unrelated factual arbitration. The case concerned whether certain video recordings were authentic. The videos showed former Kuwaiti Prime Minister Sheikh Nasser Al Sabah allegedly discussing money laundering with UBS bankers.

During the proceedings, counsel informed me that the parties had settled and asked me to sign an award reflecting their agreement. I received what I was told was their signed settlement. The award concluded—based on three independent forensic examinations confirmed by Swiss police—that the videos were authentic. The arbitration involved no financial claim, only factual determination. Its total value was circa USD 15,000 (forensic reports and arbitrator's fee).

In 2021, the Geneva Criminal Court sentenced me to 18 months' imprisonment, suspended. In 2023, the Court of Appeal reduced this to 365 suspended day-fines. An appeal is pending before the Federal Supreme Court. I was not disbarred and continue to exercise as attorney.

Neither court suggested that the forensic reports or videos were manipulated. The case concerned the alleged simulation of arbitration proceedings for political advantage in Kuwait.

I disclosed the matter to Mr. Mkrtchyan immediately after my indictment in February 2016. He was fully aware, including that documents relating to him and his companies were seized by police.

I do not raise this to excuse my mistake. I exercised poor judgment, relying on counsel's representations without independent verification. However, the incident did not involve dishonesty, fabrication of evidence, or false testimony. I was misled; I was not the deceiver.

My testimony in this arbitration is based on events I personally observed and documents the Tribunal can independently verify. I am prepared to address any questions.

The repercussions of the case affected my professional life for years because of the media coverage and mostly including difficulties opening bank accounts. Mr. Mkrtchyan knew the reasons for these issues at the time.

**III. My Representation of Mr. Mkrtchyan and NRCO**

Both witnesses correctly state that I acted as legal counsel to Mr. Mkrtchyan and NRCO in relation to the 2016 Share Purchase Agreement.

My role was limited:

– I forwarded the draft agreement from Mr. Payne to the directors in Panama for signature.

– I did not negotiate the terms, which had been agreed before my introduction to the parties.

– I did not advise on the transaction structure.

My only active contribution was introducing Mr. Payne to my contacts in Bulgaria for the LNG business, which resulted in access to major institutions. I received no payment apart from travel reimbursement.

My representation ended in December 2022. I have not represented him or his companies since May 2023.

**IV. Basis for My August 2025 Affidavit**

In August 2025, Mr. Ettinger sent me questions regarding my knowledge of the relationships among the parties. I responded based on my recollection, as I had not been provided with the underlying documents.

My core observation remains unchanged: throughout my involvement, Mr. Aripov acted as an intermediary, and Mr. Payne consistently treated him as having authority to speak for Mr. Mkrtchyan.

Whether this constituted legal agency, apparent authority, or practical intermediation is for the Tribunal to determine.

**V. Conclusion**

I provide this supplemental statement to clarify my prior testimony. I stand by my observations regarding the role of Mr. Aripov.

I declare under penalty of perjury under U.S. and Swiss law that this statement is true and correct.

Executed this 4 day of December 2025, in Founex, Switzerland.

Stoyan Baumeyer